## No. 8784.

### VALLEYVIEW CONSOLIDATED GOLD MINING COMPANY *v.* WHITEHEAD.

1. CORPORATION—*Stock Certificates—Transfer in Blank.* An indorsement by stockholder, upon a certificate of stock, whereby he assumes to "transfer to * * * shares of the stock repre-

sented by this certificate, and appoint  *  *  *  to transfer the stock on the books" makes the certificate transferrable by delivery, and the holder by purchase, the equitable owner thereof, as against the corporation. He may lawfully insert in the blank the name of any person as assignee, or attorney in fact.

THE transfer on the corporate books perfects the title.

2. STOCK LEDGER—*Duty of Secretary,* under (Rev. Stat., sec. 870), is purely ministerial. When a certificate bearing an assignment as above with the blank filled, is presented, it is his duty to accept it, and make proper entries in the transfer book. Thereupon the tranferee is a stockholder, and entitled to a certificate evidencing his character as such.

3. *Duty of Corporation as to Title.* It is no part of the corporate duty to determine the title to its shares, prior to the transfer upon its books. If one acting for the equitable owner of the certicate, endorsed, violates his instructions, he, and not the corporation, is liable for his offense.

4. EQUITY—*Laches.* One who, being entitled to the shares of a corporation, and knowing his right, remains silent, while dividends are being paid to another will not be heard to charge the corporation with the amount of such dividends.

5. ——*One Sueing in Equity,* will not avoid the effect of his laches, by the suggestion that his right asserted is one at law.

*Error to Pueblo District Court, Hon. J. E. Rizer, Judge.*

*En banc.*

## On Rehearing.

Messrs. ADAMS & GAST, Mr. M. G. SAUNDERS, Mr. E. F. CHAMBERS, for plaintiff in error.

Mr. JOSEPH DYE, Mr. B. D. REEVE, Mr. FRED HERRINGTON, for defendant in error.

Opinion by Mr. Justice Teller.

DEFENDANT in error brought suit against the plaintiff in error, and certain of its officers, to secure a transfer to her of ten thousand shares of the capital stock of said company, and the dividends declared on said shares.

The parties will be here designated as they were in the court below.

The complaint alleged that plaintiff gave to one Stewart, the president of said company, two certificates for ten thousand shares each, endorsed in blank by her vendor, in whose name the certificates had been issued, to be transferred on the books of the company, and new certificates therefor to be issued to her.

It was alleged, further, that only one of said certificates had been so transferred; that she had demanded the transfer of the other, and that such transfer had not been made. She prayed that the defendants be required to transfer said ten thousand shares, issue her a certificate therefor, and account to her for dividends, etc.

The defendants by answer denied the right of plaintiff to the demanded transfer; denied that said certificate was ever delivered to said company, or its officers, by the plaintiff, or any one in her behalf, for transfer to her; and alleged that the said ten thousand shares had been duly transferred, in August, 1907, more than two years before the beginning of this action, to divers persons, at the request of the person then in possession of the certificate, of which plaintiff at the time had full knowledge, by reason of which facts plaintiff was estopped to demand the relief prayed for.

The plaintiff had judgment for a transfer of said shares to her, and for said dividends.

We are now asked to reverse the judgment on the ground, first, that the evidence does not show that the certificate was delivered to the defendant corporation, by the plaintiff, or by any one for her, for the purpose of transfer to her; and, second, that if plaintiff ever had a cause of action, as set out in the complaint, she had lost it by delaying her suit for nearly three years after she might have brought it.

From the record it appears that the plaintiff, in October, 1906, bought the shares in question for $175, receiving at the time a certificate therefor, issued to one Towne, and having on the back a power of attorney to transfer said shares.

In the following March plaintiff delivered to Stewart this certificate, and another for the same number of shares, also purchased from said Towne, but as to the purpose of such delivery the parties to it do not agree. Plaintiff claims that Stewart took the certificate under an agreement with her to have the stock transferred and new certificates for twenty thousand shares issued to her. Stewart claims that plaintiff was a party to an agreement under which certain of the stockholders were to divide among themselves stock purchased by any one of them, and that, learning that plaintiff had purchased these shares, he went to her house and demanded the certificates for transfer and delivery according to said agreement, and that they were delivered to him for that purpose.

The office of the company was in Pueblo, where all the parties resided.

The certificates bore on the face thereof the following:

"Transferable only on the books of the company by the holder hereof in person or by attorney, upon surrender of this certificate properly endorsed,"
which was in accordance with the by-laws of the company.

Counsel for defendant in error, in oral argument, conceded that she made Stewart her agent to deliver the certificates to the company for transfer, but insisted that when the certificates had reached the company's office, Stewart's further acts, in having them transferred, were the acts of the company. This suggests a misconception of the operation of transferring shares.

The endorsement on the certificate reads as follows:

"Certificate for 10,000 shares of the capital stock issued to M. L. Town, dated _____. For value received; _____ hereby sell, convey and transfer unto _____ shares of the capital stock represented by the within certificate and do hereby irrevocably constitute and appoint _____ to transfer the said stock on the books of the within named

company, with full power of substitution in the premises.

Dated _____, 190__, in the presence of

                                    M. L. TOWN."

This endorsement made the certificate transferable by delivery, and the holder of it by purchase was, as against the corporation, the equitable owner of the shares named in it. He could lawfully write in the blank the name of any person as assignee, or as attorney in fact.

The transfer on the books perfects the title and the holder of a certificate issued on such transfer is the legal and equitable owner of the shares.

The transfer is made not by the corporation, but by the owner of the shares or his attorney.

The statute, Sec. 870, R. S. 1908, requires the company to keep a book in which the secretary must enter the names of shareholders, their holdings, the dates at which they became shareholders, etc. His duty in this respect is purely ministerial. When the certificates, endorsed as stated, with the blanks filled in as suited the holder, were presented to the secretary, his duty was to take them up and make the proper entries on the transfer book, as directed by the attorney. When that was done, the transferees were shareholders, and the company was then under obligation to issue the certificates evidencing their ownership. It was no part of the company's duty to determine the title to the shares prior to the transfer on its books. If an attorney to make the transfer violated his instructions, that is a matter between him and his principal to be determined in a proper action. *McNeil v. Bank,* 46 N. Y. 325, 7 Am. Rep. 341. The authority given him by the power of attorney is ample to protect the company in any attack on its action in the premises. It did only what the law required of it.

This appears to be the general rule as to transfers of stock.

In *Telegraph Company v. Davenport,* 97 U. S. 369, 24 L. Ed. 1047, it is said:

"The officers of the company are the custodians of the

stock books. It is their duty to see that all transfers of shares are properly made, either by the stockholders themselves or persons having authority from them."

From these considerations it results that if Stewart undertook to present the shares for transfer on the company's books, for the benefit of plaintiff, as she claims he did, and violated her instructions as to the transfer, he, and not the company, is liable for such breach of duty.

It is further contended that if the plaintiff ever had a cause of action it was lost by her delay in asserting her rights.

When she delivered these certificates to Stewart, the shares had but little value; but, when she began her action, two years and a half later, the stock had become valuable, the company having paid large dividends.

This court has several times, as have other courts, recognized the inequity of allowing relief to a party alleging fraud in an action concerning property of a speculative character, such as the property here involved, where there has been any considerable delay in the beginning of suit. *Great West Mining Co. v. W. of A. Mining Co.*, 14 Colo. 95, 23 Pac. 908; *Hall v. Nash*, 33 Colo. 500, 81 Pac. 249, and *Woodruff v. Williams*, 35 Colo. 60, 85 Pac. 100, 5 L. R. A. (N. S.) 986. In the last cited case it is said:

"If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to forward his complaint at the earliest possible time. He can not be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if it should prove to his advantage."

The plaintiff necessarily was aware of all matters concerning her rights now asserted, and yet she permitted the company to pay out to others the dividends which she now insists belong to her.

She could not equitably remain silent and inactive while the shares she claimed were drawing dividends from the company, she not having made a demand upon the com-

pany at any time for the shares, and not having complained even to the stockholders after December, 1907, so far as the record discloses.

In 16 Cyc., p. 161, it is said:

"Marked appreciation or depreciation, according to circumstances, in the value of property involved, where the right might have been asserted before such change, will prevent the granting of relief."

Again:

"Laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting a claim to be enforced." *Galliher v. Cadwell,* 145 U. S. 368, 36 L. Ed. 738, 12 Sup. Ct. 873; *Hubbard v. Manhattan Trust Co.,* 87 Fed. 51, 30 C. C. A. 520; *Alsop v. Rike,* 155 U. S. 448, 39 L. Ed. 218, 15 Sup. Ct. 162.

It is urged, however, that the doctrine of laches does not apply because the plaintiff was merely asserting a "legal right."

Defendant below insisted that plaintiff's remedy was at law, but plaintiff at all times asserted that the action was properly in equity.

The right claimed was to have plaintiff's equitable title to the shares made a legal title by a transfer on the company's books.

Having thus treated the cause as one of equitable cognizance, the plaintiff can not now change her ground and deny the right of the defendant to the benefit of an equitable defense.

The plea of laches was good, and the court erred in holding to the contrary.

The judgment is accordingly reversed.