THOMAS KAY WOOLEN MILL CO. v. SPRAGUE et al.

(District Court, D. Oregon. June 23, 1919.)

No. 8113.

1. WILLS ⬤⟳241—PROBATE—JURISDICTION—FOREIGN WILL—NECESSITY OF PROBATE IN STATE OF TESTATOR'S DOMICILE.

Under the statute of Oregon (L. O. L. § 1141) a county court has jurisdiction to probate the will of a nonresident testator dying out of the state and distribute his corporate stock, having situs in the county, although the will has not been probated in the state of his domicile.

2. WILLS ⬤⟳269—PROBATE—NATURE OF PROCEEDINGS.

The probate of a will in common form is ex parte, and no one is entitled to notice as a matter of right.

3. WILLS ⬤⟳421—PROBATE—CONCLUSIVENESS.

Under the statute of Oregon (L. O. L. § 756) a judgment or decree probating a will and distributing the estate is conclusive until vacated by appeal or impeached in a direct proceeding, and is not subject to collateral attack.

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. EXECUTORS AND ADMINISTRATORS ⬯523—FOREIGN ADMINISTRATION—DISTRIBUTION OF ESTATE.

Under the statute of Oregon (L. O. L. § 1303) regulating distribution of estates, a county court which has admitted a nonresident's will to probate may either distribute the Oregon property of the testator according to his will, or direct that it be transferred to his representatives in the state of his domicile.

5. EXECUTORS AND ADMINISTRATORS ⬯523—FOREIGN ADMINISTRATION—DISTRIBUTION OF ESTATE—CONCLUSIVENESS.

A county court's decree, distributing stock in an Oregon corporation to legatees in a nonresident's will admitted to probate by the court, vests title in them, and is conclusive in interpleader proceedings to determine a controversy as to the title.

6. INTERPLEADER ⬯3—CORPORATE STOCK—ADVERSE CLAIMS.

Where deceased's stock in a corporation was claimed by different parties, the corporation may have such claimants interplead.

7. INTERPLEADER ⬯35—COSTS.

Where deceased's stock in a corporation was claimed by different parties, and the corporation brought a bill to have the rights of such claimants determined, the corporation will be allowed attorney's fees and costs.

In Equity. Bill by the Thomas Kay Woolen Mill Company against Harry L. Sprague, Isabelle C. Farrar, Sarah Farstner, and Eliza Dakin. Decree for last three named defendants.

O. P. Coshow, of Roseburg, Or., for plaintiff.

Wood, Montague & Matthiessen, of Portland, Or., and S. T. G. Smith, of St. Louis, Mo., for defendant Sprague.

Sinnott & Adams, of Portland, Or., for other defendants.

BEAN, District Judge. On January 8, 1916, Thomas Johnson, a resident of and domiciled at St. Louis, Mo., died, possessed of property therein, and of 100 shares of the capital stock of the Thomas Kay Woolen Mill Company, an Oregon corporation, doing business at Salem in this state, at which place its stockbooks are kept, transfers made, and dividends paid. Johnson left a will executed on the 2d day of June, 1911, by which he bequeathed 40 shares of stock in the Woolen Mill Company to his sister, Eliza Dakin, of the state of Vermont, and 25 and 15 shares to his sisters-in-law, Mrs. Farrar and Mrs. Farstner, respectively, both residents of Oregon, but making no disposition of the remainder of his property. Squire Farrar, a resident of Oregon, was named in the will as executor. At the time of his death Johnson was under guardianship of Bernard C. Loeblin as an insane or incompetent person, pursuant to an order of the probate court of St. Louis, made on September 17, 1911. Loeblin inventoried the stock in the Woolen Mill Company as the property of his ward and received the dividends thereon from that time up to Johnson's death.

On January 10, 1916, two days after Johnson's death, the probate court of St. Louis granted letters of administration of his estate to Chilton Atkinson on petition of Johnson's daughter, Mrs. Fortado, in which petition she alleged that the deceased died intestate; but the court made no findings or decree to that effect. The statement was

true as to the Missouri property, but not as to the shares of stock in the Woolen Mill Company.. On February 17, 1916, Atkinson filed an inventory of the estate, in which he listed the 100 shares of capital stock of the Woolen Mill Company. On January 22, 1916, Loeblin notified one of the legatees and the executor named in the will of Atkinson's appointment as administrator, and advised them that he had nothing further to do with the estate.

On April 12, 1916, Johnson's will was admitted to probate in the county court of Marion county, and re-probated by that court on July 18, 1916, in common form, and Squire Farrar appointed executor thereof. Farrar duly qualified as executor and administrator upon the estate of Johnson in Oregon, consisting of the stock in the Woolen Mill Company, and on January 23, 1917, made distribution of 80 shares of such stock to the legatees named in the will, and filed his final account, which was duly approved, and the distribution ratified and confirmed by the court on February 21, 1917. Mrs. Fortado and Atkinson had notice of the proceedings in the Oregon court as·early as March 10, 1917. The Mill Company was notified of the admission of the will to probate, the settlement of the estate, the distribution of the stock, and the approval of the final account of the executor, but because of the claim of Mrs. Fortado and Atkinson, declined to transfer the stock on its books to the legatees named in the will.

On March 2, 1917, the legatees commenced a suit in the circuit court of Marion county against the Mill Company, Mrs. Fortado, and Atkinson to determine title to. the stock, and for a decree excluding Mrs. Fortado and Atkinson from any claim thereto, and to compel the Mill Company to cancel the outstanding certificates and issue to the plaintiffs new ones in lieu thereof. The Mill Company was personally served with process, and Fortado and Atkinson by publication, and by depositing a copy of the complaint and summons in the post office, on June 16, 1917, directed to them at their usual place of address. On July 26, 1917, Mrs. Fortado and Atkinson appeared in the suit and filed a petition for removal thereof to this court, but on October 15th it was remanded to the state court. On November 21, 1917, the defendants Fortado and Atkinson appeared specially in the state court and moved to quash the service upon them, and at the same time requested the court for a continuance of three days in which to answer in case the motion was overruled. The motion to quash was overruled and the continuance granted as requested. No further appearance was made by Fortado or Atkinson, and on November 30, 1917, their default was entered and a decree passed by the court confirming the title of plaintiffs, excluding all claims and rights of Fortado and Atkinson, and ordering and directing the Mill Company to issue the stock to the plaintiffs.

After the commencement of this suit, and on July 11, 1917, Loeblin, the former guardian of Johnson, made and filed a report of his doings as such guardian up to the death of his ward, showing that he had in his hands property belonging to his ward, consisting of 100 shares of stock in the Woolen Mill Company, of the value of $10,000, and $157.-26 in cash. The account was approved and order was entered by the

St. Louis court, directing that there be allowed and paid claims amounting to $3,076.79 for board and lodging of the deceased, costs and attorney fees of the guardianship, and authorizing and directing Loeblin to sell at public auction sufficient stock in the Woolen Mill Company to pay the above claims. On January 16, 1918, Atkinson, the administrator of the Johnson estate, reported to the St. Louis court that the stock of the Woolen Mill Company listed by him never in fact came into his possession, but was retained by Loeblin, the former guardian.

On April 12, 1918, Loeblin reported to the court that on November 28, 1917, he had sold 80 shares of such stock, as directed in the order, for $3,090.40, sufficient to pay the claims, costs of sale, and attorney fees, which sale was on the same date approved and confirmed by the court. Neither the report of the sale nor the order of confirmation discloses the name of the purchaser, and it was not until June, 1918, when a demand was made upon the Mill Company, that his name was disclosed. The Mill Company, however, declined to issue the stock to the alleged purchaser, Sprague, because of the claim of the legatees under the will, and he thereupon commenced an action against it for conversion, whereupon it filed a bill in this court against the legatees and Sprague, the alleged purchaser at the guardian sale, averring that it neither has nor claims any interest in the property, is wholly indifferent between the parties, and is ready and willing to issue the stock and pay the accrued dividends to the parties legally entitled thereto, but that it cannot determine that question for itself without great hazard, and praying for a decree determining to whom it shall issue the stock and pay such dividends. Service was made upon the respective parties, and answers filed by all of them; Sprague claiming title under the guardian sale made in Missouri, and the legatees under the probate proceedings in Oregon and the decree in the subsequent suit brought by them to quiet title.

Several interesting questions are presented by the record and have been argued by counsel. Only one of these need be considered, and that is the effect of the order and decree of the probate court of Marion county, Or., admitting the will of Johnson to probate and making the distribution thereunder, for, if such court had jurisdiction, its orders and decrees are a conclusive jurisdiction and determination of the title to the stock in controversy. It is admitted on behalf of defendant Sprague that "under the prevailing decisions, the situs of the stock is held to be in Oregon" and that the courts of such state have "jurisdiction to administer upon the estate of a nonresident for the purpose of protecting creditors resident of Oregon"; but his position, as I understand it, is that since Johnson at the time of his death was domiciled in Missouri, and died out of this state, his will must first be proved and admitted to probate in that state, and any administration in Oregon must necessarily be ancillary thereto, for the sole purpose of conserving the estate therein and protecting creditors, with no authority to the Oregon court to pass upon the validity of the will, determine the beneficiaries thereunder, or make distribution of the es-

tate, and that it should have directed the transfer of the surplus to the Missouri administrator.

[1] This position is, I take it, answered by the statutes of this state. It is provided (section 1141, L. O. L.) that proof of a will shall be taken by the county court "(3) where the testator, not being an inhabitant of this state, shall have died out of the state, leaving assets in the county." The existence of an estate within the state is the jurisdictional fact in the case of a nonresident testator·dying out of the state, and since it is admitted that the situs of the stock in question was in Marion county, Or., and that the testator was not an inhabitant of the state and died out of it, it would seem clear that under the statute referred to the county court of Marion county had jurisdiction to admit his will to probate and administer upon the estate in Oregon and make distribution thereof as provided in the will. This, I take it, may be done without the will having first been admitted to probate in the state of the testator's domicile.

Washingon has a statute similar to that of Oregon, and in Clayson v. Clayson, 26 Wash. 253, 66 Pac. 410, and Rader v. Stubblefield, 43 Wash. 334, 86 Pac. 560, 10 Ann. Cas. 20, the Supreme Court of that state in well-considered opinions ruled that the will of a nonresident dying out of the state leaving personal property therein could be proven and admitted to probate, and the personal estate within the jurisdiction distributed, without the will having first been proved in the state of the domicile of the testator, and this seems to be the holding generally. 18 Cyc. 1224; 40 Cyc. 1247; In re Clark's Estate, 148 Cal. 108, 82 Pac. 760, 1 L. R. A. (N. S.) 996, 113 Am. St. Rep. 197; Walton v. Hall's Estate, 66 Vt. 461, 29 Atl. 803.

[2, 3] The proceedings in Oregon in the probate of a will in common form are ex parte. No one is entitled to notice as a matter of right, and a judgment and decree in reference to the probate of a will and distribution of the estate are conclusive upon the whole world until vacated by appeal or impeached in some direct proceeding, and not subject to collateral attack. L. O. L. § 756; Ramsey v. Stephenson, 34 Or. 408, 56 Pac. 520, 57 Pac. 195; Mansfield v. Hill, 56 Or. 408, 107 Pac. 471, 108 Pac. 1007; Christianson v. King County, 239 U. S. 356, 36 Sup. Ct. 114, 60 L. Ed. 327; Gaines v. New Orleans, 73 U. S. (6 Wall.) 642, 18 L. Ed. 950. The statute provides that when a will has been admitted to probate any person interested may, at any time within a year after such probate, contest the same or the validity of such will. L. O. L. § 1143.

[4] Mrs. Fortado, the guardian, and the Missouri administrator were advised of the proceedings in the Marion county court in time to have availed themselves of the provisions of this statute if they had been so advised. Since the county court of Marion county had jurisdiction of the probate of the will and of the administration of the estate of the deceased in Oregon, it had the power either to distribute the Oregon property according to the terms of the will or direct that it be transferred to the representative of the deceased in Missouri to be disposed of by him. L. O. L. § 1303; 18 Cyc. 1235,.

1236; Iowa v. Slimmer, 248 U. S. 115, 39 Sup. Ct. 33, 63 L. Ed. 158, decided December 9, 1918.

[5] The decree in that respect is conclusive in these proceedings and vested title to the shares of stock in controversy in the legatees named in the will.

[6, 7] The remaining question is whether the plaintiff should be allowed solicitor's fees and costs. Whether the bill filed by it is good as a pure bill of interpleader, it is certainly good in the nature of a bill of interpleader and shows equity entitling it to relief; and since it appears that the plaintiff has and claims no interest in the subject-matter of the suit, is now and has been since the death of Johnson ready and willing at all times to issue the stock and pay the accrued dividends to the rightful owners as soon as it could safely do so, and its acts in the premises have at all times been free and aboveboard, it should in my judgment be allowed solicitor's fees, which I fix at $100, and its costs in this suit.