(No. 5903. December 12, 1932.)

MAUDE TOBIAS, Respondent, v. WOLVERINE MINING COMPANY, LTD., a Corporation, Appellant.

[17 Pac. (2d) 338.]

John M. Gleeson and Therrett Towles, for Appellant.

578

Walter H. Hanson and F. C. Keane, for Respondent.

BUDGE, J.—This is an action for conversion based upon the alleged wrongful refusal of appellant to transfer certain shares of its capital stock upon its books to respondent.

It is alleged in the complaint that appellant is an Idaho corporation; that respondent is the owner of 30,000 shares of its capital stock evidenced by two certificates for 25,000 and 5,000 shares respectively; that said certificates were originally issued to one James McConnell, who, on August 20, 1927, executed the indorsements on the back of said certificates, his signature being witnessed, and delivered the same to respondent, thereby transferring to respondent said certificates and the shares of stock evidenced thereby; that

such stock was of the value of at least twenty-five cents per share; that respondent on a number of occasions between May 15, 1928, and November 22, 1928, made demand upon appellant for the transfer of said certificates to her upon its books and offered to pay the necessary transfer fees and cost of documentary revenue stamps, but appellant refused so to do and on November 26, 1928, respondent was informed by appellant that said stock would not be transferred to her unless a decree of court was secured; that the action of appellant amounted to a conversion of said stock, which cannot be sold in the open market for more than ten cents per share; that respondent offers and tenders to defendant any transfer fee required by its by-laws and is ready and willing to affix and cancel revenue stamps necessary for such transfer; and prays judgment against appellant for $7,500 on account of the conversion of said stock, or for its transfer and $4,500 damages.

In its answer appellant denies that respondent is the owner of said stock; denies that at any time previous to August 25, 1927, or at all, McConnell indorsed said certificates; denies that he delivered said certificates to plaintiff at any time previous to August 25, 1927, or at all; denies that the value of said stock is in excess of five cents per share; denies that respondent made any demand for transfer of said certificates except in the month of September, 1927; admits that the demand was refused and that appellant required a judgment of court establishing the ownership and right to possession of said stock, believing that respondent did not have the right to possession or ownership thereof. As an affirmative defense appellant alleges that on or about August 25, 1927, McConnell became dangerously ill and on that date executed a will; that between August 25th and August 28th he suffered intense pain and at times during said period was not in a condition to realize, and did not realize, what was transpiring about him; that during this period respondent obtained said stock certificates without giving consideration therefor; that McConnell died August 28, 1927; that his will was duly admitted to probate

and provided for the payment of his debts, funeral expenses and expenses of last sickness, leaving the residue of his estate to his mother; that McConnell was indebted to numerous people in Kellogg, Idaho and Spokane, Washington, and it is alleged on information and belief that the only property left by him of any value was the stock in question; that A. T. Combs was appointed and qualified as executor of said estate; that in September, 1927, respondent made demand for the transfer of said stock and stated that the stock was a gift from McConnell to her; that appellant informed her that it was doubtful of her rights against creditors of the deceased and that it could not transfer such stock until the probate proceedings were completed or her rights established in the district court to relieve appellant of liability in case it should be proven that all of said stock was necessary to pay the creditors of deceased; that a few days later respondent informed appellant that she had loaned McConnell $250 and that he had given her the stock in payment; that respondent is insolvent and unable to respond in damages; that appellant claims no interest in the stock and is willing to transfer it to the rightful owner. The answer prays that the executor of McConnell's estate be made a party to the action and the ownership of the stock determined. Thereafter, on motion of appellant, an order was made bringing the executor in. Thereupon the executor filed an answer, to which respondent demurred. The demurrer was sustained June 2, 1931, and ten days allowed within which to plead further. On or about March 27, 1932, an order was made setting down the case for trial. On April 21, 1932, the executor filed an amended answer and affirmative defense, the latter being in effect a cross-complaint. On April 22, 1932, at the commencement of the trial, on motion of respondent, the answer of the executor was stricken from the files. Upon the issues raised by respondent's complaint and appellant's answer the cause was tried by the court and a jury, resulting in a verdict in favor of respondent for $2,250, upon which verdict judgment was duly

entered. From the judgment and from an order overruling its motion for new trial, appellant alone has appealed.

Appellant assigns as error the action of the trial court in striking from the files the amended answer and affirmative defense of the executor of McConnell's estate. The executor is not here complaining of such action and appellant is in no position to predicate error thereon. However, the court did not err in striking the pleading in question. (*Chemung Min. Co. v. Hanley*, 9 Ida. 786, 77 Pac. 226.)

Appellant specifies twenty-five other assignments of error which we shall not undertake to consider separately. The principal questions raised by these assignments are as to whether or not, under the facts, respondent was entitled to a transfer of the stock into her own name on the books of the corporation and the issuance of new certificates to her and whether or not appellant was justified in refusing so to do and by reason of such refusal is liable in conversion.

The certificate for 25,000 shares was issued to Mc-Connell June 18, 1925, and that for 5,000 shares August 6, 1927. The Uniform Stock Transfer Law (1927 Sess. Laws, chap. 88) was approved March 1, 1927, and contained the following provision: (sec. 23) "The provisions of this act apply only to certificates issued after the taking effect of this act." and also: (sec. 26) "This act shall take effect on the 1st day of January, One Thousand Nine Hundred and Twenty-eight."—from which it is clear that the transfer of the certificates in question is not governed or controlled by the Uniform Stock Transfer Law, but is governed by C. S., sec. 4730, which provides:

"Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number and designation of the

shares, and the date of the entry. Corporations may, by by-laws, provide that no transfer of their stock shall be made upon their books until all indebtedness to the corporation of the person in whose name the stock stands, whether for assessments, calls or otherwise, is paid.''

Construing a similar statute, the supreme court of Wisconsin, in *In re Klaus,* 67 Wis. 401, 29 N. W. 582, 585, said:

`` . . . . the transfer is valid to all intents and purposes, as between the parties, without the entry thereof in the books of the company. So the statute provides. Section 1751 Rev. St. But, as to third persons and the public, it is void unless so entered in the books. . . . . When the law makes stock personal property, it clothes it with all the incidents of personal property, and the owner has full dominion over it, and may dispose of it at will.''

■ It is clear from C. S., sec 4730, that the shares of stock in question were subject to be transferred by indorsement of the certificates by the signature of the proprietor and delivery thereof. The certificates in question were indorsed by the signature of McConnell, the proprietor, properly witnessed, in favor of respondent, her name being written in in the indorsements, and the same were in her possession, which at least raised a presumption of delivery and rightful possession and that the instruments of transfer should take effect according to their terms. (*Coffin v. Hyde,* 35 Ida. 247, 205 Pac. 736.) Respondent offered to surrender the certificates to appellant for cancelation, made proper demand upon it for transfer of the stock upon its books and the issuance of new certificates in her name, and tendered the necessary transfer fees and cost of documentary revenue stamps. No question is involved here as to the genuineness of the signatures of McConnell, the identity of the person named in the indorsements or the sufficiency of the demand for transfer. Appellant in its answer alleges that it claims no interest whatever in said stock. Its refusal to transfer the stock was based upon its own assertion of alleged claims of third parties, not to the stock but to certain rights attaching thereto by reason of the transfer. We

are thus brought to a consideration of the duties, rights and liabilities of a transferee and the corporation under such circumstances. An able discussion is found in *Mundt v. Commercial Nat. Bank,* 35 Utah, 90, 99 Pac. 454, 136 Am. St. 1023, based upon similar facts, where the corporation refused to transfer upon its books stock sold, assigned and transferred to respondent therein by one Dawson, the record owner. In an action against the corporation to compel the transfer of the stock the corporation answered and denied respondent's ownership and alleged that Dawson was the owner and prayed that he be made a party defendant. He was made a party but defaulted. The court said:

"When the appellant issued the original stock certificate to Mr. Dawson, it thereby held out to all who might undertake to deal with it that he was the owner thereof, and had the capacity to transfer the same. *Holbrook v. N. J. Zink Co.,* 57 N. Y. 616. When any person, therefore, presented the certificate, with a proper assignment duly signed by the person to whom it was issued by the appellant, the assignee had at least the *prima facie* legal right to have the stock transferred in his name on the books of appellant, so that he might enjoy the full benefits of a stockholder of record. The appellant had no right, except for good cause, to refuse to transfer the stock on its books and by such refusal deprive the assignee of his rights as a stockholder. Mr. Justice Field, in *Johnston v. Laflin,* 103 U. S. 803, 26 L. ed. 532, says: 'Shares in the capital stock of associations, under the national banking law, are salable and transferable at the will of the owner. . . . . The statute recognizes this transferability, although it authorizes every association to prescribe the manner of their transfer. Its power in that respect, however, can only go to the extent of prescribing conditions essential to the protection of the association against fraudulent transfers, or such as may be designed to evade the just responsibility of the stockholder. It is to be exercised reasonably. Under the pretense of prescribing the manner of the transfer the association cannot clog the transfer with useless restrictions, or make it dependent upon

the consent of the directors or other stockholders.' Nor can the corporation set itself up as the judge, and inquire into and pass upon the motives of the assignor and assignee which induced the transfer, nor can it ordinarily inquire into or pass upon the legality of the transaction by which the shares are transferred from one to the other, nor question the consideration upon which the transfer is based. *Miller v. Houston City St. Ry. Co.*, 5 C. C. A. 134, 55 Fed. 366; *Helm v. Swiggett*, 12 Ind. 194; *In re Klaus*, 67 Wis. 401, 29 N. W. 582. In the last case cited, in referring to the officer whose duty it is to make the transfer for the corporation upon its books, Mr. Justice Orton, at page 403 of 67 Wis., at page 583 of 29 N. W., says: 'His duties are purely ministerial and clerical in entering upon the books transfers of stock. He certainly has not the judicial power to pass upon the motives and intentions of the parties to the assignment of stock.'

"If the corporation has some claim upon the stock, or some rights against the assignor that would or might be affected or lost by the transfer, or if it is notified by some third person not to transfer the stock upon the ground that he claims some interest in it which would, or might be, lost by making the transfer, then it may refuse to make the transfer; but when it is called into court because of such refusal, it should present these matters as a defense, and not rely merely upon a denial of ownership for want of knowledge, or upon an averment, upon information and belief, that the assignee is not the true owner, or that the transfer between the assignor and the assignee was made in bad faith and for an ulterior purpose. The motives which actuate the parties in making the transfer of the stock, or the consideration passing between them, are entirely immaterial so long as no one claims any rights to, or interest in, the stock asked to be transferred, and where it is not made to appear that the transfer is asked to evade some legal responsibility of the stockholder. If the rights claimed by appellant to interfere in stock transfers were allowed, then it would logically follow that corporations are

*quasi* guardians, with power to pass upon the acts, not only of all of their stockholders, but also upon the acts of those who desire to become such, where such acts relate to the sale and transfer of capital stock of the corporations. If this power be once granted to corporations, then they must likewise assume the corresponding duty of guarding all the interests of the stockholders, and refuse to transfer any stock so long as the corporate officers think it was sold for an inadequate consideration, or was parted with by virtue of some transaction which they think illegal, or not made in good faith, and for all other defects in the title, known or unknown to them, which might ultimately be questioned by the assignor himself, or by some one claiming an interest in the stock. No such duty is imposed upon corporate officers, and it would be wholly impractical if it were imposed by law. . . . . The corporation should at all times guard its own interests, as well as those of its stockholders in making transfers, and it must exercise ordinary care in doing so. It is liable for negligence in making transfers; and hence it may always refuse to make a transfer when it has reasonable ground for so doing, *but it must act in good faith, and present some adequate reason for refusing to make a transfer, and support it by some evidence.*"

The rules above announced with respect to transfer of stock have been approved in the following texts and cases therein cited: Christy, The Transfer of Stock, sec. 263, p. 465; Fletcher, Cyclopedia Corporations (Perm. Ed.), vol. 12, sec. 5518, p. 389; 14 C. J. 759, sec. 1159.

This brings us to a consideration of the good faith of appellant and the adequacy of its reasons for refusing to transfer the stock and whether the reasons are supported by evidence. It is said in Christy, The Transfer of Stock, p. 466, sec. 263:

"'All of the reasons for the refusal must be given to the applicant for transfer, as any reasons not given will be considered waived. A defense not asserted at the time of the refusal to transfer cannot be raised at the trial of an action for such refusal.''

To like effect see *In re Klaus, supra.* As we understand from appellant's answer, its reasons for refusal to transfer the stock are as follows: (1) That the transfer was voidable as being a gift *causa mortis* or without or for an inadequate consideration, and in the event the assets of McConnell's estate were insufficient to pay its indebtedness, the stock or part thereof would be subject to be sold to pay the deficiency; and (2) That the transfer was voidable as being without or for an inadequate consideration, or a gift *causa mortis*, made by McConnell without his understanding the nature of the transaction while incapacitated due to his illness and the pain and suffering resulting therefrom, and for these reasons was subject to be set aside by the heirs, legatees, executor or creditors of McConnell's estate.

The fact that the transfer was voidable is not an adequate reason or good defense in favor of a corporation refusing to transfer stock, if, in fact, such transfer had not been avoided. (Christy, The Transfer of Stock, p. 485. In *Smith v. Nashville & D. R. Co.,* 91 Tenn. 221, 18 S. W. 546, 550, it is said:

"The sale being only voidable, at the election of the minor, the corporation had no right to refuse a transfer, it not having been avoided at date of transfer. Mr. Lowell, on Transfer of Stocks, at section 138 says: 'It is, however, of no consequence that the title of the purchaser is voidable, if it has not in fact been avoided, because, by the definition of the term "voidable" the title of the purchaser in such a case is valid until avoided.' "

To like effect see *Casey v. Kastel,* 237 N. Y. 305, 142 N. E. 671, 31 A. L. R. 995.

It should be observed that it is alleged in appellant's answer that at the time of the commencement of the action appellant did not know who or what creditors had presented claims to the executor of the estate. It may have known of the existence of certain indebtedness of McConnell at the time of its refusal to make the transfer, but if no claims were filed or the assets of the estate were sufficient to pay the claims of those who did file them, the first reason

relied on—that the transfer was a gift *causa mortis* and the stock liable to sale to cover deficiency in the estate—was only conjectural on the part of appellant. There is nothing in the record of claims to the stock being made by or on behalf of such creditors at the time of the refusal to transfer. Even if appellant had knowledge of the existence of outstanding indebtedness against McConnell or his estate, it cannot be seriously contended that the same would furnish appellant with an adequate reason for refusing to transfer the stock. The creditors were making no claim to the stock and they had their remedy in a proper proceeding to establish their claims, even after the stock had been transferred to respondent. The same is likewise true, in so far as the executor and legatee of McConnell's estate is concerned. As is said in 28 C. J. 699, sec. 125:

"A gift of this nature (*causa mortis*) cannot avail against creditors of the donor, where there is a deficiency of assets. If the assets of the donor's estate are not sufficient to pay his debts, the administrator can recover the subject of the gift from the donee for the purpose of satisfying the claims of the donor's creditors. But where the property is thus recovered and used for this purpose, any *residuum* that may be left after payment of the donor's debts belongs to the donee and not to the donor's estate. The mere fact that there are creditors is not, however, sufficient to defeat the gift; a deficiency of assets must be shown."

Conceding, without deciding, that the corporation might be permitted to show a deficiency in the assets of McConnell's estate, if such existed, no such showing has been made herein. The validity of the transfer by McConnell is therefore a matter that might concern the creditors and the executor of the estate, but not appellant.

As to whether the transfer was a gift *causa mortis;* or whether the consideration therefor was wanting or inadequate; or whether McConnell was mentally incapacitated by reason of illness at the time he executed the indorsements; or the motives actuating McConnell in transferring the stock to

respondent, were no concern of appellant and furnish no adequate reason for refusing the transfer on its books.

"§ 5529. Ordinarily the corporation is not concerned with the consideration paid for a transfer of shares of its stock. And the assignee has the right to have the stock transferred on the corporate books irrespective of the inadequacy of the price he paid therefor or the fact that the stock was a gift, although the inadequacy of the consideration may be considered as a circumstance to support a contention that no actual sale occurred.

"Nor, as a rule, can the corporation inquire into or pass upon the legality of the transaction by which its shares are transferred from one person to another, or justify a refusal to register the transfer on the ground that the consideration for the transfer was illegal. . . . .

"§ 5530. As a general rule, the motive in transferring or purchasing shares is immaterial, and cannot be relied upon by the corporation as ground for refusing to recognize the transfer and register the same on its books." (12 Fletcher, Cyc. Corporations, Perm. Ed., 437–439.)

To the same effect see *Ellsworth v. National Home & Town Builders*, 33 Cal. App. 1, 164 Pac. 14, 15; *Mundt v. Commercial Nat. Bank, supra;* 14 C. J. 760, sec. 1159; Christy, The Transfer of Stock, pp. 486, 487; *Woodcliff Gin Co. v. Kittles*, 173 Ga. 661, 161 S. E. 119; *Helm v. Swiggett*, 12 Ind. 194; *Commonwealth v. Camp*, 258 Pa. 548, 102 Atl. 205; *Senn v. Union Premium & Mercantile Co.*, 115 Mo. App. 685, 92 S. W. 507; *Valleyview etc. Gold Min. Co. v. Whitehead*, 66 Colo. 237, 180 Pac. 737. It follows that the reasons urged and relied upon by appellant to justify its refusal to transfer the stock to respondent on its books and to issue new certificates therefor are inadequate, and such refusal was wrongful.

The rule is firmly established that if a corporation wrongfully refuses to recognize a valid transfer of stock and permit a transfer upon its books, the transferee may treat the wrongful refusal to allow a transfer as a conversion of the shares and recover damages in an action of

trover for the conversion. (12 Fletcher, Cyc. Corporations, Perm. Ed., sec. 5523, p. 416; Christy, The Transfer of Stock, sec. 266, p. 472; 14 C. J. 765, sec. 1165. See also numerous authorities cited in support of foregoing texts and in annotation, 54 A. L. R. 1157.)

■ Under the provisions of C. S., sec. 6654, the stock in question being personal property, appellant was not without a remedy that would have afforded it adequate protection if there were conflicting claims brought home to the corporation as to the ownership of the stock in question; that section providing:

"Whenever conflicting claims are or may be made upon a person for or relating to personal property, or the performance of an· obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead and litigate their several claims among themselves. The order of substitution may be made, and the action of interpleader may be maintained, *and the applicant discharged from liability to all or any of the conflicting claimants,* although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another."

In such a proceeding the rights of the creditors, executor, heirs and legatees of the McConnell estate and respondent could have been determined and appellant relieved from liability.

"The corporation may protect itself, in the case of conflicting claims, by filing a bill of interpleader and surrendering the certificates to the court." (12 Fletcher, Cyc. Corporations, Perm. Ed., p. 437, sec. 5528.)

To the same effect see: *First Nat. Bank v. Callahan Min. Co.,* 28 Ida. 627, 155 Pac. 673; *Cooper v. Spring Valley Water Co.,* 16 Cal. App. 17, 116 Pac. 298; *Miller v. Doran,* ·151 Ill. App. 527; *Cady v. Potter,* 55 Barb. (N. Y.) 463; *Thomas Kay Woolen Mill Co. v. Sprague,* 259 Fed. 338; Christy, The Transfer of Stock, p. 430.

We have carefully considered all of the errors assigned and find no reversible error. The judgment and order overruling

motion for new trial are therefore affirmed. Costs awarded to respondent.

Lee, C. J., and Givens, Varian and Leeper, JJ., concur.