[No. 16472-1-III.   Division Three.   March 26, 1998.]

ALAN HERN, *Respondent*, v. ARLEN B. LOONEY, JR., ET AL., *Appellants*.

*Laurel H. Siddoway* of *Randall & Danskin, P.S.*, for appellants.

*William D. Symmes* and *Robert S. Magnuson* of *Witherspoon, Kelley, Davenport & Toole, P.S.*, for respondent.

SWEENEY, J. — The question here is whether a corporation's transfer agent is required to transfer an apparently validly endorsed stock share in the face of a dispute over the legality of the transfer. We conclude that he/she is and affirm the court's writ of mandamus but remand with directions to

delete some unfounded findings in the order granting the writ.

## FACTS

In 1975, Arlen B. Looney, Sr., Jack A. Hern, and August V. Klaue, stockholders in Regulus Stud Mills, Inc. (an Idaho corporation), agreed that upon each of their deaths the corporation would purchase the decedent's shares. The agreement permitted each to make a gift of all or part of his shares "to blood members of his immediate family." The gift, however, was subject to repurchase by the corporation on the death of the donee, just as if the donee were an original party to the agreement.

Mr. Klaue and Jack Hern became equal shareholders after Mr. Looney, Sr., died and the corporation purchased his shares pursuant to the agreement. Jack Hern later transferred all but one share of his stock to his son, Alan Hern. Alan Hern became the corporation's executive vice president. Jack Hern retained his position as president of the corporation; Mr. Klaue was chairman of the board, and Arlen B. Looney, Jr., was secretary-treasurer.

Jack Hern died on November 8, 1996. Later that month, Alan Hern presented Certificate No. 49 for transfer. The certificate, signed by Jack Hern and dated November 1, 1996, purported to transfer Jack Hern's remaining share to his son, Alan Hern. Alan Hern contended in an affidavit that Mr. Klaue and Mr. Looney, Jr., agreed at that time the signature on the certificate was Jack Hern's.

Transfer of the share would make Alan Hern an equal shareholder in the corporation. If the share were not transferred to Alan Hern, the corporation would be entitled to purchase it under the 1975 agreement and Mr. Klaue would become the majority shareholder.

Regulus refused to transfer the share pending advice of counsel. On December 10, 1996, Regulus's corporate counsel wrote to Alan Hern's attorney and questioned whether Jack Hern had effectively gifted the share to Alan.

He asked for more information about the transfer. Following a telephone conversation between the lawyers on December 13, corporate counsel understood that Alan Hern would supply information on his father's medical condition on November 1, 1996.

On January 2, 1997, Alan Hern petitioned in Spokane County Superior Court for a writ of mandamus to compel transfer of the remaining share to him.

Meanwhile, Mr. Klaue (in his personal capacity as a Regulus shareholder) sued Jack Hern's estate in Benewah County, Idaho. He alleged that Jack Hern did not effectively gift the share to Alan Hern before his death because he signed the certificate sometime previously but did not date it. Mr. Klaue implies that the certificate was held undated until after Jack Hern's death, when it was completed and presented for transfer. He requested that Jack Hern's estate be directed to transfer the remaining share to Regulus pursuant to the 1975 agreement.

Regulus responded to the mandamus action that the stock ownership issue was more properly addressed in an Idaho court because Regulus, an Idaho corporation, conducts business in St. Maries, Idaho. It also questioned the legitimacy of the transfer because Alan Hern failed to provide medical records. And it therefore refused to register the transfer. Regulus also asked the Spokane County court to stay the mandamus proceedings pending resolution of the Idaho action.

Before the superior court hearing on January 28, 1997, Alan Hern filed the affidavits of two doctors and two nurses verifying Jack Hern's mental competence in the final weeks of his life. Regulus supplemented its answer and alleged that the matter is "determinable as a matter of law." It alternatively demanded a jury "[s]hould the trial court determine that the issues of fact raised by [Alan Hern's] recent evidentiary submissions . . . are appropriately resolved in this proceeding . . . ."

At the hearing, Alan Hern noted that Regulus had not requested assurances that Certificate No. 49 was valid. *See*

IDAHO CODE § 28-8-402 (1995).[1] He then argued that Regulus had waived this requirement. He further argued that he *had* provided appropriate assurances.

Regulus responded that there was a dispute about the validity of Jack Hern's purported gift. And because that issue was being contested in Idaho, it had no duty to record the transfer.

During the hearing, the court refused to hear testimony related to the issues pending in Idaho: "I don't want to engage in the mini trial of the matter that is pending in another state in this court. And the [Idaho] complaint is before the court, and as I have said, I have noticed it. I have not read it, but as far as this gentleman's subjective opinions as to why or why not he took certain actions or did not, I think we are getting far afield."

In a letter opinion, the Spokane County court held it had jurisdiction in the mandamus action and concluded that Uniform Commercial Code (U.C.C.) Article 8 required transfer of the stock certificate. Alan Hern's attorney prepared an order. The order not only required transfer of the share, it also included a finding that "it is uncontroverted that Alan Hern is the rightful owner of the one (1) share of stock of Regulus represented by Stock Certificate No. 49 indorsed by Jack Hern . . . ."

In August 1997, the Idaho district court dismissed Mr. Klaue's action because Mr. Klaue also had filed a creditor's claim in Jack Hern's Washington probate proceedings. The court noted that the issues in the Idaho action were "the self-same issues pending in the creditor's claim proceedings in the Washington probate of the Jack Hern estate." Ac-

---

[1]The 1975 agreement provided that it would be governed by the laws of Washington. However, RCW 62A.8-110(1)(b) provides that the local law of the corporation's jurisdiction applies to "[t]he rights and duties of the issuer with respect to registration of transfer." Regulus is an Idaho corporation, and Idaho law therefore applies in this context. However, both Idaho and Washington have adopted Article 8 of the Uniform Commercial Code, and the applicable provisions are in all pertinent respects identical.

cording to Regulus, the dismissal of the Idaho action has been appealed.

## ISSUES

Regulus identifies eight separate issues. However, they logically fall within four general areas: (1) Whether it was required to register the transfer under Article 8 of the Uniform Commercial Code? (2) Whether the superior court erred in failing to defer to the jurisdiction of the Idaho court by dismissing or staying this action? (3) Whether the superior court erred in failing to conduct a jury trial on disputed factual issues? And (4) whether the language of the superior court's order and writ was overbroad? We discuss each in order.

## DISCUSSION

(1) Did the court err by requiring Regulus to transfer the share to Alan Hern?

IDAHO CODE § 28-8-401, in relevant part, provides:

(1) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:

(a) Under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;

(b) The indorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(c) Reasonable assurance is given that the indorsement or instruction is genuine and authorized (section 28-8-402);

. . . .

(g) The transfer is in fact rightful or is to a protected purchaser.

(2) If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

An issuer may require assurance from the transferee of (among other things) the genuineness of the signature of the transferor. *See* IDAHO CODE § 28-8-402(1)(a). Subsection 402(2) allows an issuer to require other, unspecified, "reasonable assurance."

Mandamus is appropriate to compel officers of a corporation to register a stock transfer. RCW 7.16.160; *Fuller v. Ostruske*, 48 Wn.2d 802, 809, 296 P.2d 996 (1956).

Regulus claims it had no duty to register the transfer for two reasons: Alan Hern did not respond to requests for assurances that Jack Hern was legally competent, and a dispute over the lawful ownership of the share was pending in Idaho.

Regulus relies on the rule that a writ of mandate is appropriate only when the duty to be enforced exists at the time the writ is sought. *Walker v. Munro*, 124 Wn.2d 402, 409, 879 P.2d 920 (1994); *State ex rel. Hamilton v. Cohn*, 1 Wn.2d 54, 58, 95 P.2d 38 (1939). Because Alan Hern had not provided the requested assurance at the time he filed the mandamus action, Regulus claims it had no duty to register the transfer. *Walker* and *Hamilton* are distinguishable. Both involved questions about statutes that had not yet taken effect, so the duties were not "capable of performance." *Walker*, 124 Wn.2d at 409. Here, Regulus was *capable* of performing the duty Alan Hern sought to enforce. And, in any event, Alan Hern ultimately provided the assurances.

Mr. Looney, Jr., and Mr. Klaue appeared in this mandamus action as representatives of the corporation. As such, they had a fiduciary relationship to those who presented conflicting claims to the same share. 12 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF

PRIVATE CORPORATIONS § 5528, at 384 (perm. ed. rev. vol. 1996). They were neither obligated, nor permitted, to look beyond the facial legality of the transfer: "The law, however, does not require or permit the officers of the corporation to assume the functions of a court of justice, and by their decision forever conclude the rights of the contending claimants." *Id.* at 385.

Pre-U.C.C. Idaho law similarly provides that to justify a refusal to record a transfer a corporation *"must act in good faith, and present some adequate reason for refusing to make a transfer, and support it by some evidence." Tobias v. Wolverine Mining Co.*, 52 Idaho 576, 17 P.2d 338, 341 (1932).

Under the U.C.C., an issuer is liable for a transfer to a person not entitled to the stock only if the transfer was registered "[p]ursuant to an ineffective indorsement or instruction." IDAHO CODE § 28-8-404(1)(a). The Code also provides that "an issuer is not liable to an owner or other person suffering loss as a result of the registration of a transfer of a security if registration was made pursuant to an effective indorsement or instruction." IDAHO CODE § 28-8-404(3). These provisions, read together,

> have the effect of providing that an issuer has no duties to an adverse claimant unless the claimant serves legal process on the issuer to enjoin registration. Issuers . . . perform a record-keeping function for the direct holding system that is analogous to the functions performed by clearing corporations and securities intermediaries in the indirect holding system . . . . Thus, issuers are not liable to adverse claimants merely on the basis of notice. . . . [T]he policy of this section is to protect the right of investors to have their securities transfers processed without the disruption or delay that might result if the record-keepers risked liability to third parties. . . .

> [Section 8-404] changes prior law under which an issuer could be held liable, even though it registered transfer on an effective indorsement or instruction, if the issuer had in some fashion been notified that the transfer might be wrongful against a third party, and the issuer did not appropriately discharge its duty to inquire into the adverse claim.

U.C.C. § 8-404 cmts. 2-3.

Therefore, under Article 8, "it is immaterial that at the time the registration was made the issuer had notice or knowledge of an adverse claim. The registration is wrongful only if the issuer knew that its action was in violation of the rights of the adverse claimant, as when the issuer ignores a court order to register the adverse claim and refrain from making the registration that the issuer made." 8A RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 8-404:5, at 76 (3d ed. rev. vol. 1996).

For us, the conclusion is inescapable. In processing a request for registration of a transfer, a corporation acts merely as a record keeper. It is not burdened with the responsibility of determining the rights of adverse claimants to the shares. Nor can it do so, if a claimant presents a prima facie valid transfer certificate. *Tobias*, 17 P.2d at 342. A proceeding that attempts to determine the rights of adverse claimants would extend beyond the issues of a simple mandamus action, which is aimed at requiring officers to perform ministerial acts. *See Walker*, 124 Wn.2d at 410-11. The limited action here was never intended to adjudicate the validity of Jack Hern's purported gift to Alan Hern.

Regulus relies on *Hertz Drive-Ur-Self Sys., Inc. v. Doak*, 94 Colo. 200, 29 P.2d 625 (1934) for the proposition that the mere existence of a separate dispute as to ownership of a share precludes mandamus. *Hertz* does not support that position. There, the court refused to dismiss a mandamus because an adverse claimant refused to sue to rescind the sale of the stock. He was instead "content to remain in office as president of the company indefinitely in control of its affairs, and meanwhile to silence the petitioner, if he can, with mere verbal allegations of fraud and trickery, but he and the other respondents apparently recoil at the prospect of having their charges sifted in court." *Id.* at 626. The Colorado court did not hold that the mere filing of a claim in a separate proceeding precludes mandamus.

Neither Regulus nor any other potentially adverse claim-

ant presented any evidence in this mandamus action that Jack Hern's endorsement on Certificate No. 49 was invalid. The transfer was at best then voidable. *See Tobias*, 17 P.2d at 342. And the superior court correctly concluded that Regulus had a duty under IDAHO CODE § 28-8-401 to register the transfer.

(2) Did the court err by refusing to dismiss this mandamus action or stay it pending resolution of the Idaho action?

The trial court had personal and subject matter jurisdiction in this action. Regulus contends, however, that it should have declined to exercise its jurisdiction and instead dismissed the action pursuant to the "visitorial powers" doctrine.[2] This doctrine authorizes a court to refuse to interfere in the internal affairs of a foreign corporation for three reasons: (1) resolution of the dispute would require the court to interpret the law of another state; (2) courts of the other state alone may possess authority to enforce decrees; and (3) officers, directors, and records of the corporation are solely within reach of the other state. *State ex rel. Starkey v. Alaska Airlines, Inc.*, 68 Wn.2d 318, 331, 413 P.2d 352 (1966).

Just as in *Starkey*, the facts here do not support dismissal. First, although Idaho law applies, the applicable U.C.C. provisions adopted by both Idaho and Washington are essentially identical. Second, the Washington court has authority to enforce its writ. Third, while Regulus's principal place of business is in Idaho, its executive offices are in Washington. It keeps all corporate records, including the corporate stock transfer ledger, in Washington. All of its shareholders live in Washington. It holds all shareholders' and directors' meetings here. And it maintains corporate bank accounts here. Thus, the officers, owners,

---

[2]Regulus uses the term forum non conveniens, but the phrase is not mentioned in the cases it cites. Under the doctrine of forum non conveniens, courts have discretionary power to decline jurisdiction "when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum." *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 579, 555 P.2d 997 (1976).

and records all are within the easy reach of a Washington court. Accordingly, the court did not err in refusing to dismiss this action. *See Starkey*, 68 Wn.2d at 331-32.

Regulus also contends the superior court should have stayed this action pending resolution of Mr. Klaue's Idaho claims. But such a delay would have defeated the very purpose of a mandamus action—to compel an officer to perform ministerial acts. A stay would have prevented Mr. Hern from exercising his vote on the disputed share, which he had, at least, a prima facie right to do.

Regulus argues the superior court should have followed the procedure used in *Fuller*. There, an action to enforce a contract for sale of stock was consolidated with a later-filed mandamus action. The Supreme Court first addressed the contract issues, then the mandamus issues. *Fuller*, 48 Wn.2d 802. However, there is no indication either party requested a decision in the mandamus action first, nor did the Supreme Court hold that the mandamus action should have been stayed pending resolution of the underlying contract issues. Whether a stay would, or should, have been granted was therefore not an issue in *Fuller*. Here, Regulus did not file a separate action in Spokane County so there could be no consolidated action anyway. *Fuller* is therefore not applicable.

(3) Was Regulus entitled to discovery and a jury trial?

■ ■ Although Regulus filed a jury demand, it argued in writing and verbally that the issue before the court was determinable as a matter of law. It did not, however, raise any factual issues. And the testimony it presented at the hearing established only that Mr. Klaue had filed a separate action in Idaho in which he challenged the validity of Jack Hern's gift of Certificate No. 49. Indeed, Alan Hern's attorney agreed that those factual issues were not before the court in this mandamus proceeding. Because there was no factual dispute here, there were no factual questions on which to conduct discovery or for a jury to decide.

(4) Did the language of the superior court's writ improperly suggest that it had resolved factual questions regarding ownership?

This mandamus action was limited solely to the question whether the corporation should be compelled to register the transfer of Certificate No. 49. Mr. Hern's counsel agreed that the lawful ownership of the share "is not an issue in this case at this time." Despite this understanding, Alan Hern presented and the superior court approved an order finding that "it is uncontroverted that Alan Hern is the rightful owner of the one (1) share of stock of Regulus represented by Stock Certificate No. 49 indorsed by Jack Hern" and that Regulus had improperly failed to issue a new certificate "evidencing [Alan Hern's] ownership of said share . . . ."

As we have concluded, this action decided only the narrow legal issue of whether Regulus was required under U.C.C. Article 8 to register the transfer of the share. The writ therefore should not preclude any subsequent dispute over the lawful ownership of the share involved.

The court properly declined to consider the factual issues raised in Mr. Klaue's Idaho action. The writ nonetheless appears to resolve those factual issues. To clarify the preclusive effect of the court's writ, we remand for entry of a writ appropriately limited to requiring the immediate transfer of the share.

Regulus has provided a copy of Alan Hern's memorandum to the Idaho court. In that document, Mr. Hern argues vigorously that the superior court's writ was res judicata in the Idaho action. Although the Idaho court appears to have rejected this argument, Mr. Klaue will no doubt raise (or has raised) the same issue in the Washington probate proceedings over Jack Hern's estate. The writ here does not preclude litigation in either forum over the question of ownership.

Attorney Fees. In his brief, Alan Hern requests attorney fees on the authority of RCW 62A.8-401(2) and IDAHO CODE § 28-8-401(2). Both provide for *liability* for failure to register a transfer. But neither provides for reasonable attorney fees.

In a statement of additional authorities, Mr. Hern

cites several Washington cases in support of his "application for attorney fees due to bad faith and intransigence." *See Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984); *In re Marriage of Greenlee*, 65 Wn. App. 703, 710-11, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992). Neither party's conduct in this case rises to the level of bad faith sufficient to justify an award of attorney fees. Nor is this appeal "frivolous." *See* RCW 4.84.185; *Chapman v. Perera*, 41 Wn. App. 444, 455-56, 704 P.2d 1224 (appeal is frivolous only "if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists"), *review denied*, 104 Wn.2d 1020 (1985). The request for attorney fees is therefore denied.

## DECISION

The writ of mandamus was proper. But the language in the order purporting to resolve the underlying ownership issue was not. The case is remanded and the trial court is instructed to amend the order accordingly. Alan Hern's request for fees is denied.

In light of our decision, we do not reach the issues raised in the Appellants' motion on the merits and for accelerated review.

SCHULTHEIS, C.J., and KURTZ, J., concur.