[No. 18893.   Department One.   May 18, 1925.]

TRI-STATE TERMINAL COMPANY, *Respondent*, v. WASH-INGTON WHEAT GROWERS ASSOCIATION *et al.*, *Appellants.*[1]

EVIDENCE (169, 175)—PAROL EVIDENCE—TO VARY WRITTEN CONTRACT—COMPLETENESS OF WRITING. The terms of a written contract under which the purchasers took possession of and operated warehouses purchased by them, cannot be modified by evidence of declarations indicating that the possession was only a qualified one.

SPECIFIC PERFORMANCE (5-2)—DECREE—INTEREST. In awarding specific performance of a contract for the issuance of preferred stock to bear interest from August 10, 1921, interest is properly allowed from such date, where there is no showing of insolvency of the corporation, or want of sufficient net profits to pay the interest.

SAME (24½)—CONTRACTS ENFORCIBLE—ADEQUACY OF REMEDY AT LAW. Specific performance of a contract for the issuance of preferred stock in a corporation will be decreed where its value is not known or reasonably ascertainable, as the remedy at law is inadequate.

APPEAL (424)—REVIEW—HARMLESS ERROR—PREJUDICE. Error cannot be assigned on the granting of an alternative money judgment in decreeing specific performance of a contract to issue preferred stock, where appellant could either issue the stock or pay the judgment.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered April 16, 1924, in favor of the plaintiff, in an action for specific performance, tried to the court. Affirmed.

[1]Reported in 236 Pac. 75.

*Garrecht & Twohy,* for appellants.

*Bausman, Oldham & Eggerman* and *Arthur E. Simon,* for respondent.

MAIN, J.—The plaintiff alleged in its complaint that it had sold to the defendants six warehouses, and sought a decree specifically enforcing the provisions of the contract for the delivery of preferred stock in payment thereof. The cause was tried to the court without a jury, and resulted in a decree of specific performance as to two of the warehouses and denying relief as to the other four. From this judgment, the defendants appeal.

The respondent is a corporation whose members were mostly wheat growers. It owned warehouses situated one each at Connell, Mesa, Dilling, Emery, Hatton and Hay, in this state. The stockholders of the respondent, or many of them at least, were members of an organization known as the Farmers Union. On December 10, 1919, at the annual meeting of this union, it was proposed to organize one co-operative association of wheat growers in Washington, Oregon and Idaho, and a resolution to this effect was passed. Upon the adoption of the resolution, a committee was appointed to organize the appellant corporations and negotiate for the taking over of the elevators and warehouses owned by the respondent "at their appraised values for adequate consideration in preferred stock and to cease handling wheat" as soon as the appellants' organization had been assured.

After the passage of the resolution, the organization committee caused to be prepared what is known as the wheat association standard marketing agreement. A campaign was then inaugurated to secure the necessary signatures of wheat growers to this agreement. Before the plan could be carried out, it

was necessary that twenty-five per cent of all wheat growers in the territory should sign the agreement prior to July 1, 1920. Early in the spring of 1920, it became apparent that the necessary number of signatures could not be had within the time fixed, and on May 10 of that year an agreement was entered into between the parties extending the time until March 1, 1921, and the necessary number of signatures were obtained within the time fixed by this agreement. The committee then proceeded to organize the appellant corporations, one of which is the subsidiary of the other, as it was provided in the wheat growers association that they should. Thereafter and in August, 1921, the respondent sold the warehouses and the appellants took possession of the one at Hay and also at Hatton.

In the decree the trial court found that:

"In August, 1921, the plaintiff sold and delivered to defendants warehouses and equipment at Hay and Hatton, Washington, for which defendants agreed to pay; for the Hay property $9,000.00; for the Hatton property $10,535.00, aggregating $19,535.00, in preferred stock of Washington Growers' Warehousing Corporation, bearing eight per cent interest from August 10, 1921, and to be retired at the rate of one class or one sixth thereof annually beginning with December, 1922. That defendants took and assumed possession of said properties, but have failed, refused and neglected to make payment therefor in preferred stock or otherwise; and defendants have further failed and refused to issue said preferred stock or to provide or enforce bushelage assessments to provide for retirement thereof, and the classes thereof retirable in 1922 and 1923 are now in default because thereof. That plaintiff has fully performed its contract and has tendered proper conveyances; that plaintiff's remedy at law is wholly inadequate and it is entitled to specific performance."

The appeal has to do only with the warehouses at Hay and Hatton, as there is no cross-appeal from the judgment denying specific performance as to the other four.

The appellants' first point is that the court erred in granting partial specific performance. It is argued that, when the appellants took possession of the warehouses in question, they did so under a qualified agreement which in legal contemplation amounted to a counter proposition which had the effect of ingrafting into the contract new and material stipulations. We find nothing in the evidence which would justify a holding that the manner of taking possession operated as a modification of the terms of the contract. It is true that the appellants offered evidence, which was rejected, to the effect that, when the representatives of the appellants took possession of the warehouses, they made certain declarations to the agents of the respondent then in charge which would indicate that the possession taken was only a qualified one. These declarations cannot be given the effect of modifying the contract. The parties had agreed upon its terms. They had mutually appointed appraisers for the properties and accepted the appraisements. The appellants took possession of the properties and operated them. Declarations which may have been made to the keepers of the warehouses cannot have the effect of modifying the terms of the contract. Neither was the evidence of the intention of the representatives of the appellants taking possession of the properties material. Their acts were unequivocal in their nature and could not be modified by an intention out of harmony therewith. In *Schwartz v. Church of the Holy Cross*, 60 Minn. 183, 62 N. W. 266, it was said:

"While the law is quite strict in holding that, if an article is not according to contract, the vendee must

exercise the right of rejection within a reasonable time, and as acts speak louder than words, it is undoubtedly true that if, after inspection, the vendee uses the property in a way in which he would have no right to use it unless he was owner of it, such use will, as a general rule, be deemed an acceptance, however much he may protest in words that he does not and will not accept.''

The present is not a case where the character of the taking possession depended upon the intention of the representatives of the appellants.

The next point is that the court erred in allowing interest. The trial court in its decree found, and the evidence supports the finding, that the properties were to be paid for in the preferred stock of the Washington Growers Warehousing Corporation, bearing eight per cent interest from August 10, 1921. The complaint was not filed until August 4, 1922. There is no claim of insolvency or that the rights of creditors are involved. Neither is there any showing that there are not sufficient net profits out of which to pay the interest. Under these circumstances there was no error in the allowing of interest.

The next point is that the court erred in admitting parol evidence to vary the terms of the written contract of May 10, 1920. That contract did not purport to cover the terms upon which the warehouses were to be taken over. It was there provided in general terms that the respondent, if the necessary number of signatures were secured to the marketing agreement, would combine its wheat handling facilities with the association or its subsidiary corporation, and it was understood that the combination would result in one co-operative selling organization. In accordance with the evidence, the trial court found that the agreement under which the properties were taken over was made in August, 1921, which was long after the written contract

referred to was executed. The contention that the evidence was inadmissible because it varied or tended to vary the terms of the contract is not well founded.

The next point is that specific performance should not have been given, but that the respondent should have been required to pursue an action for damages. It is argued that specific performance requiring the delivery of stock in a corporation will only be decreed under unusual and exceptional circumstances, and that these do not exist in the present case. The stock was not obtainable on the open market and it had no established market value. The properties had been turned over to the appellants. This is not a case where there is simply a contract for the purchase of capital stock and the one selling refuses to deliver. It is generally held that specific performance will be granted as to corporate stock where the value thereof is not known or is not reasonably ascertainable. In a note to the case of *Rimes v. Rimes,* 22 A. L. R. 1030, 1041, the authorities are cited and reviewed and it is there said:

"Generally speaking, where the corporate stock which is the subject of a contract of sale of which specific performance is sought is of unknown and of not easily ascertainable value, or is unobtainable in the open market, it has been held that a suit for the specific performance thereof may be maintained, the remedy at law in such a case being regarded as inadequate."

In the present case the remedy at law for damages would have been inadequate and the action was properly brought for specific performance.

Finally, it is contended that the court erred in decreeing an alternative money judgment in case the preferred stock should not be delivered. It is unnecessary to give much discussion to this question, as we are unable to see how the appellants are prejudiced there-

by. Under the decree, the appellants can either deliver the stock or pay the money judgment.

We find nothing in the case of *Crancer v. Lareau,* 1 Fed. (2d series), 117, out of harmony with the views herein expressed.

The judgment will be affirmed.

TOLMAN, C. J., BRIDGES, PARKER, and ASKREN, JJ., concur.