## E. T. WEIR, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12668.   Promulgated May 28, 1948.

*John E. Laughlin, Jr., Esq.*, for the petitioner.
*A. W. Dickinson, Esq.*, for the respondent.

## OPINION.

HILL, *Judge*: To determine whether petitioner realized a long term or a short term capital gain under section 117 of the Internal Revenue Code,[1] the proper means to measure the holding period of the 900 shares of stock must be decided. The sole issue of this case is whether the holding period of stock acquired by the exercise of an option includes the day of acquisition of the stock or begins the day following such acquisition. If May 1, 1944, is counted, petitioner has realized a long term capital gain; if May 2, 1944, is the starting date, then petitioner has realized a short term capital gain. We think the latter alternative is correct.

At the outset it should be noted that the stock in question falls within the definition of a capital asset under section 117 (a) (1) of the code. It is conceded that the day of the sale, November 1, 1944, should be included within the holding period. It is also clear that the time during which an option to purchase is held unexercised is not to be included within the holding period of the property acquired by use of such option. *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496.

To decide the narrow issue of this case, we turn first to section 117 of the code for any possible instruction concerning the measurement of the holding period of such a capital asset. Section 117 (h) (1)–(6) offers specific means to measure the holding period of capital assets when they are acquired under the special circumstances enumerated

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or an obligation of the United States or any of its possessions. or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer.

(2) SHORT-TERM CAPITAL GAIN.—The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 6 months, if and to the extent such gain is taken into account in computing net income ;

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income ;

\* \* \* \* \* \* \*

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation. only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income :

100 per centum if the capital asset has been held for not more than 6 months ;

50 per centum if the capital asset has been held for more than 6 months.

therein. It is contended by the petitioner that section 117 (h) (6)[2] governs this case, and that the interpretation of this section by section 29.117–4 of Treasury Regulations 111 [3] supports his contention.

Certainly the language of neither the code nor the regulations refers specifically to stock acquired by the exercise of an option. Petitioner argues, however, that the phrase "rights to acquire such stock" includes not only stock rights, but also options to acquire stock; that an option to acquire is a "right to acquire"; that Congress and the Commissioner were using "rights" in a broad, nontechnical sense.

We can not agree with the petitioner's contention. We believe that by "rights" both the code and the regulations referred only to the acquisition of stock through the exercise of stock rights emanting from stock holdings, for the following reasons:

(a) When section 117 (h) (6) is viewed in its context in the code and its history is considered, it is clear that Congress intended to refer only to rights arising out of stock ownership. In this situation, where the meaning of the statutory word "rights" is in dispute, it is permissible to look outside the statute for the proper construction. *United States* v. *American Trucking Associations*, 310 U. S. 543, 544; *United States* v. *Dickerson*, 310 U. S. 562.

Before the 1942 amendment to the code, which added section 117 (h) (6), the statutory formula for determining the holding period of stock acquired through stock rights was complicated and frequently administratively difficult. The 1939 amendment had added paragraph (5) to section 117 (h).[4] While this section dealt specifically with the holding period of stock and stock rights upon a distribution,

[2] (h) DETERMINATION OF PERIOD FOR WHICH HELD.—For the purpose of this section—

* * * * ' * * *

(6) In determining the period for which the taxpayer has held stock or securities acquired from a corporation by the exercise of *rights to acquire such stock* or securities, there shall be included only the period beginning with the date upon which the right to acquire was exercised. [Emphasis supplied.]

[3] SEC. 29.117–4. DETERMINATION OF PERIOD FOR WHICH CAPITAL ASSETS ARE HELD.—* * *

The period for which the taxpayer has held stock, or stock subscription rights, issued to him as a dividend shall be determined as though the stock dividend, or stock right, as the case may be, were the stock in respect of which the dividend was issued if the basis for determining gain or loss upon the sale or other disposition of such stock dividend or stock right is fixed by the apportionment of the basis of such old stock.

The period for which the taxpayer has held stock or securities issued to him by a corporation pursuant to the exercise by him of *rights to acquire such stock* or securities from the corporation will, in every case and whether or not the receipt of taxable gain was recognized in connection with the distribution of the rights, begin with and include the day upon which the *rights to acquire such stock* or securities were exercised. A taxpayer will be deemed to have exercised rights received from a corporation to acquire stock or securities therein where there is an expression of assent to the terms of such rights made by the taxpayer in the manner requested or authorized by the corporation. [Emphasis supplied.]

[4] (5) In determining the period for which the taxpayer has held stock or rights to acquire stock received upon a distribution, if the basis of such stock or rights is determined under section 113 (a) (19) (A), there shall (under regulations prescribed by the Commissioner with the approval of the Secretary) be included the period for which he held the stock in the distributing corporation prior to the receipt of such stock or rights upon such distribution.

it did not expressly settle the holding period of stock acquired by the exercise of stock rights. House Report No. 2333, 77th Cong., 2d sess., p. 98, states that the rule developed by the courts as to this question was:

* * * that shares acquired in the exercise of stock rights consist in part of long-term assets, computed by reference to the date of acquisition of the original stock and representing the stock right element in the new stock, and in part of short-term assets, computed by reference to the date of exercise of the rights and representing the subscription price element in the new stock. Hence the gain realized upon sale of the stock would consist in part of short-term capital gains and in part of long-term capital gains. * * *

Thus, in 1942 the applicability of section 117 (h) (5) to the holding period of stock acquired through the exercise of stock rights was not only uncertain, but the rule of measurement as interpreted by the courts was complex and difficult to administer. There was a compelling need for clarification. The House and Senate reports on the 1942 amendment to the code [5] show that Congress definitely had in mind a solution to this problem when it drafted section 117 (h) (6). This section was enacted as a simple, uniform, and administratively workable solution. Not one word of mention was given to stock options. It is thus apparent that the statutory language "rights to acquire such stock" was the equivalent of stock rights in the mind of Congress.

(b) It will be noted that the word "only" is used in section 117 (h) (6). There is a logical basis for this word of limitation in reference to the holding period of stock acquired by the exercise of a stock right; a more extended holding period was possible under section 117 (h) (5) by tacking on the holding period of the original stock. No such reason for a word of limitation regarding holding period of stock acquired by the exercise of an option can be found.

(c) Basically there is a fundamental distinction between a stock right and an option. The former is an equity inherent in stock ownership as a quality inseparable from the capital interest represented by the old stock. *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247. An option to purchase stock is a right in no way based upon the ownership of stock. Thus if Congress, in section 117 (h) (6), had intended to link options with stock rights, it surely would have mentioned them specifically. This is particularly true since section 117 (h) (5) did make reference to stock rights, while options could not have been included under any circumstance. While Congress used an unnecessarily broad term in the word "rights," yet "A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, 'excepting as a

---

[5] H. Rept. No. 2333, 77th Cong., 2d sess., p. 98 and S. Rept. No. 1683, pp. 121–122, are identical.

different purpose is plainly shown.' " *United States* v. *American Trucking Associations, supra*, p. 544.

(d) Turning to Regulations 111, section 29.117–4, we think the words "rights to acquire stock" found in the second paragraph thereof hereinabove quoted are specific in scope and refer only to stock subscription rights to acquire stock.

In support of his contention that this phrase also includes options to acquire stock, petitioner calls attention to the contrast between the first and second quoted paragraphs of the regulations; the former deals specifically with "stock and stock subscription rights" issued as a dividend, the latter with "rights to acquire stock." He argues therefore that the words in the second paragraph are general in scope.

We agree that such a paragraph separation is not without a purpose, but we can not draw the same conclusion therefrom. We think the purpose is to emphasize the new distinction created by section 117 (h) (6) in the means of measuring the holding period of stock or unexercised stock rights received as a dividend and stock acquired by the exercise of stock rights. Formerly these holding periods were similarly measured under the provisions of section 117 (h) (5), which made possible the addition of the holding period of original stock. By virtue of section 117 (h) (6), the holding period of stock acquired by the exercise of a stock right is no longer governed by the provisions of 117 (h) (5), but is limited to the time during which the stock itself has been held.

A phrase in the second quoted paragraph of the regulations lends further support to our view. The words "whether or not the receipt of taxable gain was recognized in connection with the distribution of the rights" are significant, due to the fact that, while stock rights are received upon a dividend distribution, this can not be so in regard to options, on account of their very nature. These words therefore have a logical basis in reference to stock rights which can not be duplicated in relation to options.

We think the regulations employed the broad term "rights" in reference solely to rights arising from stock ownership in order to show that now the holding period of all stock acquired by the exercise of such stock rights is to be uniformly measured "in every case."

Thus the conclusion is inescapable that section 117 has not provided any specific means of measuring the holding period of the capital assets here involved. What then is to be the method of applying the standard set up in section 117 (b) for determining short term and long term capital gains when the statute is silent?

The Board of Tax Appeals, when faced with a case similar to the present one, followed the general rule of construction that in measuring a time period the day of the transaction which marks the beginning of the period is to be excluded from the computation. *Harriet M.*

*Hooper*, 26 B. T. A. 758. In that case taxpayer had acquired certain real property on October 10, 1925, and sold it on October 10, 1927, at a profit. The Revenue Act of 1926 provided in pertinent part as follows:

SEC. 208. (a) For the purposes of this title—

(1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

\* \* \* \* \* \* \*

(8) The term "capital assets" means property held by the taxpayer for more than two years \* \* \*.

The Board of Tax Appeals, in determining that the taxpayer had held the property exactly two years, quoted from *Sheets* v. *Selden's Lessee*, 2 Wall. 190, the following language of the Supreme Court:

The general current of the modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period *from* or *after* a day named, is to exclude the day thus designated, and to include the last day of the specified period. \* \* \*

There appears to be no sound reason for not applying the rule of construction noted in the *Hooper* case, *supra*. We therefore conclude that petitioner's holding period is measured from May 2, 1944, through November 1, 1944. It follows that respondent's determination must be sustained.

*Decision will be entered for respondent.*