[Nos. 33253, 33254.   Department One.   May 3, 1956.]

ORPHA FULLER et al., Appellants, v. W. H. OSTRUSKE et al., Respondents and Cross-appellants.

THE STATE OF WASHINGTON, on the Relation of S. A. Liening et al., Appellants, v. PACIFIC ALASKA CONTRACTORS, INC., et al., Respondents.[1]

[1] Reported in 296 P. (2d) 996.

*Dalton & Bibb,* for appellants.

*Eisenhower, Hunter, Ramsdell & Duncan,* for respondents and cross-appellants.

FINLEY, J.—This is an appeal from two judgments in the consolidated cases of *Orpha Fuller et al. v. W. H. Ostruske et al.* (hereinafter referred to as the *contract* action), and *State ex rel. Liening et al. v. Pacific Alaska Contractors, Inc. et al.* (hereinafter referred to as the *mandamus* action). Both actions involve share certificates Nos. 1 and 4, for forty and forty-five shares, respectively, constituting one third of the outstanding stock of Pacific Alaska Contractors, Inc., an Alaska corporation. The corporate books show that the shares are held by Philip Strand, one of the relators in the *mandamus* action. During much of the period with which we are concerned, the corporation's attorney, James Ramsdell (a defendant in the *mandamus* action), had physical possession of the share certificates as security for approximately five thousand dollars owed to the respondents by Mr. Strand. However, this obligation was repaid prior to May 9, 1953, when Mr. Strand and Mr. Ostruske entered into an alleged contract for the sale of Strand's stock.

The facts concerning the *contract* action may be summarized as follows: Mr. Ostruske, who owned two thirds of the corporate stock of Pacific Alaska Contractors, Inc., became dissatisfied with Mr. Strand's services as the company's construction superintendent and flew from Tacoma to Kodiak for the purpose of inspecting two of the company's Alaska construction projects. Mr. Ostruske decided that

Mr. Strand should be ousted. The two men agreed that Mr. Ostruske would purchase Mr. Strand's stock, provided they could arrive at a satisfactory price. After some preliminary negotiations, Mr. Ostruske prepared a written document and signed several copies of it on May 9th. The document (plaintiffs' exhibit No. 16) reads as follows:

"Agreement for sale of stock between Philip Strand, seller and, W. H. Ostruske, purchaser:

"As of this date, *I agree to sell* my eighty five (85) shares of Pacific Alaska Contractors, Inc. stock to W. H. Ostruske for the sum of $16,511.25. *I also resign as an officer of the Company and Superintendent of work, and relieve the Corporation of any further obligation to pay me a salary.*

"Payment for the stock is to be in full within thirty (30) days: It is understood that this sale of stock is subject to release of attachment held upon it by Robert Parrish.

"The attachment amount is $10,700.00, and the balance is $5,811.25. The transfer of stock is to be handled by Mr. Ramsdell with whom the sum of $5,811.25 is held for disbursement at once." (Italics ours.)

Mr. Strand did not sign the above-mentioned document at the time but he did take one of the copies signed by Mr. Ostruske and promptly left Alaska, returning to Tacoma via plane on a ticket furnished to him by the corporation at Ostruske's direction. When Mr. Strand arrived in Tacoma and contacted Mr. Ramsdell, he was advised that the latter knew nothing about the above-quoted contract, and that Mr. Strand would have to await the return of Mr. Ostruske to Tacoma. Upon Mr. Ostruske's return, Mr. Strand telephoned him and was told that the purchase of the stock would not be completed; that Ostruske did not consider himself bound by the agreement. At no time prior thereto had Strand tendered to Ostruske or Ramsdell a copy of the agreement signed by Strand; nor is Strand sure whether he signed the agreement before or after his telephone conversation with Ostruske.

On May 29, 1953, Strand assigned to appellants Fuller and Liening his shares of stock and his interest in the sale contract. In July, 1953, Fuller and Liening commenced the *contract* action against Ostruske and his wife for the spe-

cific enforcement of the contract. Parenthetically, appellants' present attorneys were subsequently substituted for the attorneys who commenced the *contract* action, and Fuller and Liening assigned to attorney Bibb one third of their interest in the stock and contract of sale as an attorney's fee.

Respondents filed an amended answer in the *contract* action, denied the existence of a contract, and set up as affirmative defenses: (1) that the submission of the written agreement to Strand by Ostruske was an offer which was not accepted by Strand prior to its withdrawal; (2) that the stock was subject to execution and garnishment by a district court of Alaska; and (3) that a preliminary injunction from an Alaska district court has been served on Pacific Alaska Contractors, Inc., which purportedly restrained and enjoined transfer of the corporate shares of Philip Strand.

After both parties had rested and argued the *contract* action, the trial judge invited written briefs to be submitted on the question of the propriety of the remedy of specific performance. Appellants filed with their brief a motion to reopen for the taking of additional testimony to show facts entitling them to specific performance of the contract or, in the alternative, to reopen the matter for the reception of evidence regarding the market value of the shares for the purpose of establishing the measure of damages.

The trial court held that Ostruske and Strand had entered into a contract for the sale of the stock; that Ostruske breached the contract, but that no damages were proved by appellants; that appellants were not entitled to a decree of specific performance, their action being one to recover money only. The court entered judgment for appellants in the sum of ten dollars, as nominal damages. With reference to appellants' motion to reopen, the trial judge was of the opinion that the appellants had not been subjected to any surprise; that there was no evidence then available which could not with reasonable diligence have been supplied at the trial; consequently, he denied the motion.

Respondents have cross-appealed from the judgment entered in the *contract* action. Their principal contention is that Strand's signature was a condition precedent to the formation of the alleged contract. Appellants take the position that Strand's signature was not essential, and that a binding oral contract was entered into between the parties prior to May 9, 1953, when Strand left Alaska; that it should be specifically enforced, or, in the alternative, that they should be granted their motion to reopen to introduce additional evidence, for the purpose of proving damages.

■ The testimony of the parties concerning the negotiations leading up to the alleged contract is inconsistent and conflicting. A lengthy discussion of the evidence and the conflicts therein would serve no useful purpose. From our examination of the record, we cannot say that the evidence clearly preponderates against the trial court's finding that the parties entered into an *oral agreement* for the sale of the stock, and they "contemplated that the agreement would be reduced to writing and signed by the parties thereto."

■ If the terms of a contract are agreed upon and the intention of the parties is plain, then a contract exists, even though one or both of the parties may have contemplated that a more formal contract would be executed subsequently. *Loewi v. Long,* 76 Wash. 480, 136 Pac. 673; *Washington Dehydrated Food Co. v. Triton Co.,* 151 Wash. 613, 276 Pac. 562. Under such circumstances, a written draft of the contract is viewed merely as a convenient memorial or record thereof.

Even if we should accede to respondents' theory that Ostruske's submission of the written agreement to Strand was a mere offer, an acceptance by Strand was evidenced by his conduct subsequent to May 9, 1953, in that he (1) immediately returned to Tacoma via plane with a ticket furnished by respondents; (2) discontinued all association with the corporation; and (3) gave notice of his acceptance to Ostruske's agent, Mr. Ramsdell.

■ On a contract for the sale of shares of corporate stock, an action for the contract price may be brought by the seller only if it appears that such stock is not for sale on the market, or that its value is not known or reasonably

ascertainable. *Tri-State Terminal Co. v. Washington Wheat Growers' Ass'n*, 134 Wash. 519, 236 Pac. 75. In the absence of such circumstances, an action for damages for the difference between the agreed purchase price and the actual value of the stock affords an adequate remedy at law. *Templeton v. Warner*, 89 Wash. 584, 154 Pac. 1081, 157 Pac. 458; *Fitzgibbons v. White*, 296 Mass. 468, 6 N. E. (2d) 429. In the case at bar, neither the complaint nor the evidence shows that the stock was nonmarketable or that its value could not be determined. The trial court did not err in refusing to enter a decree of specific performance.

■■ We find no merit in appellants' contention that the trial court abused its discretion in refusing to grant the motion to reopen. There is no showing that the offered evidence was newly discovered or that it could not, with reasonable diligence, have been supplied at the trial. A motion to reopen a case is addressed to the sound discretion of the trial court. The manner of exercising that discretion will not be disturbed by this court, except for manifest abuse. *Ritter v. Seattle*, 82 Wash. 325, 144 Pac. 61; *Zackovich v. Jasmont*, 32 Wn. (2d) 73, 200 P. (2d) 742; *Hyak Lbr. & Millwork v. Cissell*, 40 Wn. (2d) 484, 244 P. (2d) 253.

The *mandamus* action was commenced by appellants in April, 1954. The petition for the writ of mandamus alleged the transfer of the stock in question to appellants and prayed that respondents be compelled to transfer the shares on the stock registry of the corporation into the name of the appellants.

■ It is well settled that the courts of one state have no jurisdiction to exercise visitorial powers over foreign corporations or to interfere with the management of their internal affairs by injunction, mandamus or otherwise, even though the foreign corporation may maintain an office and place of business in the state and, expressly or impliedly, may agree to submit to the jurisdiction of the court. *Meade v. Pacific Gamble Robinson Co.*, 21 Wn. (2d) 866, 153 P. (2d) 686; *Boyette v. Preston Motors Corp.*, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376.

■ It is a simple matter to recognize the existence and the purpose of the foregoing legal principles. The difficulty is in drawing the line between matters which do and others which do not pertain to the management of the internal affairs of a corporation. However, it has generally been held that an action of mandamus to compel a foreign corporation to register a transfer of stock does not constitute an interference with the internal affairs of the corporation. The remedy thus afforded merely allows the enforcement of an individual's contract right, and this right is enforcible wherever the corporation is properly made a party defendant. *Citizen's Nat. Bank v. Consolidated Glass Co.,* 83 W. Va. 1, 97 S. E. 689; *Evans v. R. W. Evans & Co.,* 284 Pa. 126, 130 Atl. 313; *Guilford v. Western Union Tel. Co.,* 59 Minn. 332, 61 N. W. 324; *Lively v. Husebye,* 60 Wash. 47, 110 Pac. 673.

■ Although the Pacific Alaska Contractors, Inc., is organized under the laws of Alaska, it has an office in Tacoma, Pierce county, Washington; the officers and directors of the corporation reside in Pierce county, Washington, and the minute book, stock book and other books, records and accounts of the corporation are located in Pierce county. At no other place could it make the transfer as conveniently as in Tacoma. The shares in controversy have been assigned to the appellants; there is no dispute as to title. All that remains to be done is to register a perfected right. The making of such transfer is merely ministerial. It is not an interference with the management of the internal affairs of the corporation.

This court has previously held that mandamus lies to compel the officers of a domestic corporation to transfer assigned stock upon the books of the company. *State ex rel. Howland v. Olympia Veneer Co.,* 138 Wash. 144, 244 Pac. 261. In view of the foregoing authorities and the circumstances in the instant case, we are constrained to hold that mandamus also lies to compel the officers of the foreign corporation here involved to register the transfer of the stock to appellants on its corporate books.

In respondents' answer to the *mandamus* petition, they

incorporated, by reference, the affirmative defenses (pertaining to the Alaska garnishments and injunctions) which were contained in their answer in the *contract* action; and it appears from the record that the only reason found by the trial court for refusing the relief sought by appellants is the preliminary injunction issued out of the Alaska court. No error has been assigned to the findings of fact made by the trial court in the *mandamus* action. The trial court's findings of fact Nos. V, VI, and VII, read as follows:

"V  That at all times prior to May 12, 1954 physical possession of the certificates for the shares involved in this matter was in respondent James V. Ramsdell, attorney for respondent corporation. That pursuant to the stipulation of May 12, 1954, the possession of said certificates was delivered to the attorneys for the relators and said certificates, properly endorsed, have been tendered into court by the relators at the trial hereof, together with the written assignments thereof.

"VI  That on the 5th day of November, 1953, a temporary restraining order was entered in the cause of Ethel Granite, plaintiff, vs. Philip G. Strand, Gladys Strand and Pacific Alaska Contractors, Inc., defendants, in the District Court for the Territory of Alaska, Fourth Division, Cause No. 7760, enjoining the said Philip G. Strand, Gladys Strand and said corporation from selling, transferring or otherwise disposing of said certificates of stock owned by the defendants, Philip G. Strand and Gladys Strand, and further enjoining the attorneys, employees, representatives and other agents of the said corporation from selling, transferring or disposing, or attempting to sell, transfer or dispose of said shares of stock. That on the 16th day of November, 1953 in said Court and cause a preliminary injunction was also issued enjoining and restraining said corporation, its attorneys, employees, representatives and other agents from selling, transferring or disposing, or attempting to sell, transfer or dispose of said shares of stock, which injunction was still in force at the time of the trial of this cause. *That neither said temporary and preliminary injunctions nor any process in said cause No. 7760 was served upon said Philip Strand, that at no time did any levying officer take possession of said share certificates or were said share certificates surrendered to the corporation.*

"VII  That the aforesaid temporary and preliminary injunctions were issued pursuant to a judgment theretofore

entered against the said Philip G. Strand and Gladys Strand, his wife, obtained by the plaintiff, Ethel Granite, in the District Court for the Territory of Alaska, Fourth Division, Cause No. 6562 and out of which case, on the 25th day of May, 1953, alias execution and notice of garnishment was obtained and served upon defendant W. H. Ostruske as President of Pacific Alaska Contractors, Inc. on August 15, 1953." (Italics ours.)

From the foregoing findings of fact, the trial court made the following pertinent conclusion of law:

"That respondents Pacific Alaska Contractors, Inc., W. H. Ostruske and James Ramsdell are effectively enjoined from transferring said shares on the books of the corporation by the preliminary injunction issued out in Cause No. 7760 in the District Court for the Territory of Alaska, Fourth Division, and relators' petition to compel such a transfer must be denied."

The appellants contend that the facts as found by the trial court do not support the above conclusion of law; that the trial court should have found that the preliminary injunction, although served on the corporation, did not prevent the transfer of the stock.

Prior to the enactment of the uniform stock transfer act, it was generally held in most jurisdictions that shares of stock should be considered as located at the domicile of the state of incorporation of the company, the certificate being merely evidence of the fact of ownership of the shares and not in itself constituting attachable property. The uniform act, however, which has been adopted in both Washington (RCW 23.20) and Alaska (Alaska Comp. Laws, 36-1-41), adopts the "commercial" theory of stock certificates, whereby the shares are identified with the certificates, which are not regarded as mere evidences of the stock but the stock itself.

Section 13 of the uniform stock transfer act (RCW 23.20-.140) provides as follows:

"No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid *until the certificate is actually seized by the officer making the attachment or levy, or is surrendered to the corporation which issued it, or*

*its transfer by the holder has been enjoined.* Unless a certificate is lost or destroyed, the corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it." (Italics ours. )

Section 14 of the uniform stock transfer act (RCW 23.20-.150) provides:

"A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching the certificate or in satisfying the claim by means thereof as is allowed at law or in equity, in regard to property which cannot readily be attached or levied upon by ordinary legal process."

This court has not had occasion to pass upon the sections in question, and we know of no reported Alaska case on the matter. In the instant case, however, it is uncontroverted that the stock certificates in question were not seized by a levying officer. The trial court also found that there was no surrender of the certificates to the corporation. While at one time possession was given to Ramsdell, as agent of the corporation, for purposes of a pledge, title was never transferred. The trial court further found that a transfer of the certificates *by the holder* had not been enjoined.

■ The fact that the injunction was served on the corporation is of little or no consequence. The *injunction* referred to in the uniform act is not one against the corporation but is against the owner of the certificate, or the person having the right or power to transfer the certificate. The effectiveness of an injunction served on a corporation but not on the shareholder was discussed in *Elgart v. Mintz,* 123 N. J. Eq. 404, 197 Atl. 747, wherein the court said:

"Concededly, the stock certificate here involved has not been seized by the attaching officer or surrendered to the corporation which issued it; but it is claimed that the transfer of that certificate has been enjoined and that, therefore, actual seizure is not necessary. But it will be noted that under the provisions of section 13 of the Uniform Stock Transfer act it is the 'transfer *by the holder*' which must be enjoined. In the instant case it is only the transfer by the corporation which has been enjoined, . . . The statute requires an effective injunction. . . . [Citing cases.]

As was said by Vice-Chancellor Backes in the *Amm Case*:

" 'It is evident that the restraint upon the . . . company does not serve the levy under the statute, for it was not the holder of the certificates. . . . The efficacy of the writ must be found in its lawful execution. The levy must be self-sufficient. If not, it falls. Injunctions can neither amplify the attachment under the writ, were it valid, nor validate it if it be deficient. If the injunction against the . . . company was intended as an auxiliary means of forestalling the holder from transferring the stock, it was, in the absence of a valid levy, a misuse of power.' "

See, also, *Johnson v. Wood,* 15 N. J. Misc. 150, 189 Atl. 613; *Amm v. Amm,* 117 N. J. Eq. 185, 175 Atl. 186; *Bloch-Daneman Co. v. J. Mandelker & Sons,* 205 Wis. 641, 238 N. W. 831; 122 A. L. R. 366.

Under § 1 of the uniform stock transfer act (RCW 23.20.020), title to a certificate and to the shares of stock represented thereby can be transferred only as follows:

" . . . (1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section *shall be applicable although the charter or articles of incorporation or code of regulations or bylaws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation* or shall be registered by a registrar or transferred by a transfer agent." (Italics ours.)

If a transfer on the books of the corporation was a prerequisite to the transfer of the stock, it is possible that the Alaska injunction would be effective. However, one of the purposes of the uniform stock transfer act, as indicated above, was to make certificates of stock, in so far as possible, representative of the shares and thereby obviate the neces-

sity of changing the registration of stock on the books of a corporation in order to make an effective transfer or sale of the stock. *Harbridge v. American Nat. Bank of Racine,* 177 Wis. 206, 187 N. W. 853; *Snyder Motor Co. v. Universal Credit Co.* (Texas Civ. App.), 199 S. W. (2d) 792; *Haughey v. Haughey,* 305 Mich. 356, 9 N. W. (2d) 575.

In the present case, the trial court was of the opinion that,

"  . . .  notwithstanding the legal ownership in and to the rights represented by these shares and then to the relators, that the court does not have jurisdiction to compel this corporation to override the decree of the District Court of Alaska."

▪▪▪ Such a result would be correct if the injunction entered in the district court of Alaska was an effective legal bar to the relief sought by appellants; but, as has been indicated, the Alaska court was without jurisdiction over the stock or any of the *holders* thereof. Therefore, the order purporting to enjoin the transfer of the stock was ineffective. *Westerman v. Gilbert,* 119 Fed. Supp. 355; *France v. Freeze,* 4 Wn. (2d) 120, 102 P. (2d) 687.

▪▪▪ We have repeatedly held that the provisions of the Federal constitution which require that full faith and credit must be given in each state to the judicial proceedings of every other state do not prevent a collateral attack upon the jurisdiction of a sister state in order to render a judgment which is later offered in evidence in an action brought in another state; and, if it be affirmatively shown that the facts necessary to give the courts jurisdiction of the persons and subject matter of the action did not exist, the record will be a nullity, notwithstanding the contrary recitals contained therein. *Dormitzer v. German Sav. & Loan Society,* 23 Wash. 132, 62 Pac. 862 (affirmed 192 U. S. 125, 48 L. Ed. 373, 24 S. Ct. 221); *Brown v. Brown,* 46 Wn. (2d) 370, 281 P. (2d) 850; *Hammond v. Hammond,* 45 Wn. (2d) 855, 287 P. (2d) 387.

The judgment of the trial court in the *contract* action is affirmed. The judgment in the *mandamus* action is reversed, with instructions that the writ should issue. Appellants filed a transcript in the *contract* action and in the *mandamus*

action, and filed one statement of facts, which became a part of the record on appeal and was used in both actions. In the *mandamus* action, appellants shall recover costs of the transcript therein and one half of the costs of the statement of facts; otherwise, the parties shall bear their own costs. It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

