MAX H. WYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69874. Filed December 31, 1959.

*Bryant R. Dunn, Esq., James Wm. Johnston, Esq., Ben J. Gantt, Jr., Esq.,* and *Charles S. Mullen, Esq.,* for the petitioner.

*James D. Webb III, Esq.,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1951 in the amount of $10,638.32. The only issue is whether petitioner held such an interest in 5,000 shares of stock of Klamath Basin Pine Mills Corporation for more than 6 months prior to liquidation of that corporation so as to entitle him to long-term capital gains treatment on the gain he realized on the liquidation of those shares.

### FINDINGS OF FACT.

Some of the facts are stipulated and are found as stipulated.

Petitioner, Max H. Wyman, is an individual residing in Seattle, Washington. Petitioner filed his individual income tax return for the taxable year ended December 31, 1951, with the collector of internal revenue at Tacoma, Washington.

Petitioner has engaged in lumber manufacturing for approximately 15 years in association with his father, M. A. Wyman, and his brother, D. E. Wyman. On January 1, 1948, petitioner together with his father and brother formed a partnership by equal contributions of capital for the purpose of conducting a lumber manufacturing operation under the name of Klamath Basin Pine Mills, Klamath Falls, Oregon. On March 1, 1948, petitioner, M. A. Wyman, and D. E. Wyman, as incorporators, caused the incorporation of Klamath Basin Pine Mills Corporation, hereafter called Klamath Basin, a Washington corporation, with an authorized capital stock of 600,000 shares of $1-par-value common stock for the purpose of taking over and operating as a corporation the aforesaid partnership. On March 2, 1948, they transferred all of the properties and assets of the partnership to Klamath Basin in exchange

for a total of 525,000 shares of stock, the incorporators at a meeting held on that day having placed a value on the assets received over liabilities assumed of $525,000. Petitioner was issued and received one-third of these shares, a total of 175,000 shares. The remaining 75,000 shares of the authorized 600,000 shares were never subscribed to or issued.

From time to time petitioner had been approached by his next door neighbor and closest friend, Loren Haynes, with the request to participate in one of petitioner's numerous successful business transactions. On or about March 5, 1948, in consideration of $5,000 paid to him by Loren Haynes, petitioner caused to be transferred of record to Loren Haynes 5,000 shares of his Klamath Basin stock subject to an oral agreement that petitioner could at any time reacquire these shares upon payment to Loren Haynes of $10,000.

Sometime prior to the first annual meeting of stockholders of Klamath Basin held on March 7, 1949, and again on January 6, 1950, Haynes delivered to petitioner a proxy giving petitioner the right to vote the 5,000 shares of stock at all the meetings of the stockholders of Klamath Basin. Petitioner at all times subsequent to the transfer and up until the dissolution of Klamath Basin on June 11, 1951, voted the 5,000 shares at the meetings of the stockholders. During the period of corporate existence of Klamath Basin, none of the stock, except for the 5,000 shares held by Loren Haynes, was owned by anyone other than petitioner, M. A. Wyman, and D. E. Wyman.

During the corporate existence of Klamath Basin, Loren Haynes received all dividends declared on the 5,000 shares held by him in the total amount of $4,285.74.

On April 6, 1951, the board of directors and the stockholders of Klamath Basin for the first time considered liquidating the corporation and ceasing operations.

Pursuant to the oral agreement between petitioner and Haynes at the time of the transfer of the 5,000 shares of stock to Haynes, petitioner on May 18, 1951, telegraphed Haynes and requested that he endorse the stock certificate and attach it to a sight draft for $10,000 drawn on petitioner. On May 21, 1951, the certificate representing the 5,000 shares of stock in Klamath Basin, endorsed by Haynes and attached to a sight draft drawn on petitioner in the amount of $10,000, was received by the Seattle-First National Bank, Seattle, Washington. The draft was paid by petitioner and the certificate was delivered to him on that date.

On the date of the transfer of the 5,000 shares from Haynes back to petitioner the book value of the 5,000 shares was considerably in excess of $10,000.

On June 11, 1951, Klamath Basin was liquidated and petitioner received assets having a fair market value of $1,642,575.30. The fair market value of the assets received by petitioner in the liquidation of the 5,000 shares of stock which had been held of record by Haynes was $46,930.77. Petitioner's Federal tax basis in the assets contributed to Klamath Basin in exchange for his 175,000 shares of stock in Klamath Basin was $175,000.

On his tax return for the year 1948, petitioner did not report a sale of the 5,000 shares in Klamath Basin to Haynes. On his 1951 income tax return petitioner reported the exchange of his one-third stock interest in liquidation of Klamath Basin as follows: 170,000 shares were reported as exchanged for assets having a fair market value of $1,637,539.81. Petitioner reported $170,000 as his cost basis on the 170,000 shares and deducted the cost basis from the fair market value of the shares and reported $1,467,539.81 as gain from the sale of capital assets held for more than 6 months. With respect to the 5,000 shares involved in the Haynes transaction, petitioner reported the exchange of these shares for assets of the fair market value of $48,162.90 [1] and treated this amount as follows:

The sum of $10,000 was offset against the $10,000 cost basis derived from the redemption by petitioner of Haynes' interest in the 5,000 shares; the balance, $38,162.90, was reported as received in exchange for the interest petitioner had retained in the 5,000 shares in the transaction of 1948 as gain from the exchange of capital assets held for more than 6 months.

The nature of the transaction between petitioner and Loren Haynes on March 5, 1948, was a sale of 5,000 shares of stock in Klamath Basin to Loren Haynes with petitioner receiving an oral option to repurchase the stock at any time for $10,000. Petitioner "held" the 5,000 shares of stock in Klamath Basin from May 21, 1951, to June 11, 1951, less than 6 months prior to the liquidation.

OPINION.

The only question is whether petitioner held the 5,000 shares of stock, for which he received $46,930.77 in value of assets upon the liquidation of Klamath Basin, for more than 6 months prior to the liquidation of Klamath Basin.

The documentary evidence before us supports respondent's determination that petitioner sold the 5,000 shares of stock to Loren Haynes on March 5, 1948, for $5,000, and received an oral option to repurchase the stock for $10,000 at any time, which option he exercised on May 21, 1951, and repurchased the stock for $10,000 on that

---

[1] The fair market value of the assets received by petitioner in liquidation was reduced by respondent. The fair market value of the assets received for the 5,000 shares was stipulated to be $46,930.77.

date. The stock transfer book shows the cancellation of certificate No. 2 originally issued to petitioner for 175,000 shares and the issuance in exchange therefor of certificate No. 4 to petitioner for 170,000 shares and certificate No. 5 to Loren Haynes for 5,000 shares on March 5, 1948. Certificate No. 5 was assigned by Loren Haynes to petitioner and was attached to a sight draft for $10,000 drawn on petitioner which petitioner paid on May 21, 1951, and the stock certificate was delivered to petitioner on that date. Klamath Basin was liquidated on June 11, 1951, and petitioner received for these 5,000 shares assets having a fair market value of $46,930.77.

Haynes was holder of record and had possession of the stock certificate from March 5, 1948, to May 21, 1951. Under the Uniform Stock Transfer Act adopted by the State of Washington (Washington Rev. Code, ch. 23.80), shares of stock are identified with the certificates and the certificates are not regarded as mere evidence of the stock but the stock itself. *Fuller* v. *Ostruske*, 48 Wash. 2d 802, 296 P. 2d 996, 1002 (Sup. Ct. 1956). Haynes received all the dividends on the stock during the period he held it, he gave petitioner a proxy to enable petitioner to vote the stock, and the sight draft contained restrictions on delivery of the stock until the draft was paid. All of the above are indicative of ownership of the stock by Haynes.

So, unless petitioner can establish that by oral agreement he retained some interest in the stock in 1948 in exchange for which he received a part of the liquidating dividend in 1951, petitioner realized a short-term capital gain on the entire amount he received for this stock on liquidation of Klamath Basin, and respondent's determination must stand.

Petitioner's argument is that he sold only a limited interest in the stock to Haynes and retained a beneficial interest in the stock in excess of $10,000 which qualified as a capital asset, so that when the corporation was liquidated he received $10,000 for the limited interest he reacquired from Haynes in 1951 for that amount, and $36,930.77 for the retained beneficial interest he had held since 1948.

Even if we accept petitioner's version of the transaction with Haynes we cannot find that it amounted to anything different from a sale of the stock to Haynes with the option to repurchase the stock at any time for $10,000. The term "capital asset" as defined by section 117(a)(1), I.R.C. 1939, "means property held by the taxpayer * * *." The word "held" is considered to be synonymous with ownership. *Howell* v. *Commissioner*, 140 F. 2d 765 (C.A. 5), affirming a Memorandum Opinion of this Court. Thus the holding period of stock for capital gains purposes begins when its ownership begins. *McFeeley* v. *Commissioner*, 296 U.S. 102; *Ethlyn L. Armstrong*, 6 T.C. 1166, affirmed per curiam 162 F. 2d 199 (C.A. 3). An option to purchase stock does not constitute a present interest in the stock

and the period during which the option to purchase is held unexercised is not to be included in the holding period of the stock. *Helvering* v. *San Joaquin Co.*, 297 U.S. 496; *E. T. Weir*, 10 T.C. 996, affirmed per curiam 173 F. 2d 222 (C.A. 3).

Petitioner testified that his next door neighbor and close friend, Loren Haynes, had often asked him to be let in on some of petitioner's successful business ventures, that when Klamath Basin was incorporated he told Haynes he would let him in on it by selling him 5,000 of his shares for $5,000, but with the understanding that petitioner would have the voting rights on the stock (to retain the one-third voting balance with his father and brother), and could buy it back at any time for $10,000. Haynes was to get all dividends paid on the stock during the time he held it. There is some conflict in the testimony about whether petitioner guaranteed Haynes against loss on the deal. The uncontradicted testimony of the revenue agent who first talked to petitioner about the transaction was that petitioner told him the only agreement with Haynes was that he could buy the stock back for $10,000. Petitioner did not recall what he had told the agent but testified on redirect examination: "I did guarantee him as near as I can tell it. * * * I promise you [Haynes] you won't lose any money on the deal because you can't lose any money on the deal because it's [stock] worth twenty to twenty-five per cent more now than what I'm offering to transfer it to you for." We doubt that such a statement was intended as a guarantee against loss—but only as reassurance because the stock was already worth more than Haynes was paying for it. Petitioner also testified in answer to a direct question as to whether a part of the agreement was that he had to buy the stock back: "I don't remember ever discussing the fact whether I had to buy the stock back at any time."

Petitioner testified that following his conversation with Haynes he went to his attorney's office where the stock transfer book was kept and had the attorney cancel his certificate for 175,000 shares and issue two new certificates, one to himself for 170,000 shares and one to Haynes for 5,000 shares "to evidence his [Haynes] interest in that particular block of stock." Prior to the first meeting of the stockholders on March 7, 1949, Haynes also gave him a proxy to vote the 5,000 shares, which is not in evidence, and another proxy for this purpose dated January 6, 1950, which is in evidence and which reserves to Haynes the right to revoke it at any time.

When it was decided to liquidate the corporation in 1951 petitioner wired Haynes to endorse the certificate and send it attached to the sight draft to the bank in Seattle, which Haynes did. The telegram also said: "You can keep enough out of ten grand to pay your capital gains tax and if you want to re-invest balance will talk to you about

that next month." The sight draft instructed the bank to hold the stock if the draft was not paid on presentation.

Petitioner points to the fact that he didn't report this transaction on his 1948 income tax return as evidence that he didn't consider the transaction to be a completed sale. We do not know why he did not report it on his return because it is clear from his own testimony and his telegram to Haynes that he thought he had sold something to Haynes which would produce a capital gain for Haynes when he bought it back in 1951. We might also observe that if petitioner had retained the valuable beneficial interest he claims to have reserved in 1948, a considerable part of his $5,000 basis in these 5,000 shares of stock would have been attributable to the reserved interest, and he would have had a gain on what he did sell in 1948. It is also interesting to note that petitioner's father and brother probably thought petitioner had made a complete sale of the stock because petitioner testified he got in trouble with them because of this sale, and petitioner's certificate for 170,000 shares soon thereafter had a restrictive endorsement placed on it directing attention to a certain agreement for purchase rights dated April 5, 1948.

The only other evidence concerns the financial condition of the corporation and a letter from Haynes to petitioner dated September 3, 1957, which were stipulated in evidence subject to respondent's objection as to their materiality and relevance. The letter read as follows:

Dear Max:

This is to confirm our understanding in regard to the 5,000 shares of Klamath Basin Pine Mills stock that I bought from you in 1948 for $5,000.00. You will remember that I gave you a stock proxy at the time of purchase and agreed that you could buy the stock back at any time for $10,000.00 and that my maximum interest in the stock was limited to $10,000.00. You will remember that you did buy the stock back in 1951 for $10,000.00.

Very truly yours,

LOREN HAYNES

We think Haynes' understanding of this transaction might be very relevant and material to this issue, but he was not called to testify despite the fact that he was living in Los Angeles at the time of trial and was apparently available as a witness. His letter, obviously written at the request of petitioner after respondent questioned the transaction, is unsatisfactory evidence at best, but both parties rely on it on brief. Petitioner claims that the reference to Haynes' maximum interest in the stock being limited to $10,000 supports his position, while respondent urges that it shows there was an outright sale of the stock with an agreement that petitioner could buy it back. Without further explanation from Haynes we cannot give much weight to the letter one way or the other, but we do not think the letter alone supports petitioner's claims.

On the above evidence we cannot find that the transaction was anything other than it purported to be on the recorded evidence and as found by respondent, that is, a sale of the stock with an option to repurchase. It would serve no useful purpose to discuss the cases cited by the parties. The cases cited by petitioner stand for the proposition, for the most part, that someone other than the record holder of legal title can hold a beneficial interest in property which is recognizable for tax purposes.[2] But they are all decided on their own facts, and none of them had the situation here present where Haynes not only was the owner of the stock of record and held possession thereof, but was also entitled to all the income from the stock while he held it. The case nearest in point cited by either party seems to be *James H. Torrens*, 31 B.T.A. 787, 794, wherein it is said:

The presence in an agreement of sale of stock providing for its repurchase by the seller upon condition does not in itself destroy the then completed sale to the purchaser, nor does such an agreement alone revest any title in the original seller. It is merely an unexecuted option to rescind the original completed sale.

See also *Helvering* v. *San Joaquin Co.*, *supra*.

Furthermore, petitioner fails to point out how the amount distributed in liquidation of the corporation, or what part thereof, could be considered to have been distributed in exchange for his alleged retained beneficial interest, as opposed to the stock itself. The assets received by petitioner on liquidation of the corporation were distributed to him because he then was the owner of the stock itself. Also, petitioner recovered his original investment in these 5,000 shares when he sold the stock to Haynes in 1948, and he had no investment with respect to these shares upon which he could realize a capital gain until he paid Haynes $10,000 to repurchase the stock in 1951, less than 6 months prior to the liquidation. As said in *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260, 265:

The purpose of § 117 was "to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments * * *"

We can sympathize with petitioner, who was trying to help his friend, but we can't decide the case on that basis. We have found as an ultimate conclusion of fact that petitioner did not hold the stock upon which he received the distribution in liquidation for more than 6 months. Petitioner's gain is therefore taxable as a short-term capital gain.

*Decision will be entered for the respondent.*

---

[2] *Ruth W. Collins*, 14 T.C. 301; *Everett D. Graff*, 40 B.T.A. 920 affd. 117 F. 2d 247 (C.A. 7) ; *Frank R. Malloy*, 5 T.C. 1112; *Corporation of America* v. *McLaughlin*, 100 F. 2d 72 (C.A. 9) ; *F. P. E. Noteholders Corporation*, 5 T.C. 472; *Pat O'Brien*, 25 T.C. 376; *State* v. *Pacific Waxed Paper Co.*, 22 Wash. 2d 844, 157 P. 2d 707 (Sup. Ct., 1945).